KING v. DAVIS et al.

(Circuit Court, W. D. Virginia. December 21, 1903.)

1. EJECTMENT—JUDGMENT—EXECUTION—DELAY—REVIVAL.

Where a judgment in favor of plaintiff in ejectment was not enforced by a writ of possession within a year and a day after it was entered, it is insufficient to support a writ subsequently issued without being revived, both as provided by Code Va. 1887, § 3577 [Va. Code 1904, p. 1910], and at common law.

2. SAME—SCIRE FACIAS—PROCEEDINGS—FINAL JUDGMENT.

A scire facias proceeding to revive a default judgment in ejectment in the Virginia federal courts is matured at rules, but the office judgment on default does not become final until there is either a judgment of the court at the following term, confirming it, or until the term, or the 15th day thereof, has passed without an order setting it aside.

3. PROCESS—SERVICE—NAME OF DEFENDANT.

Where a defendant named "Francis" was personally served with process in which he was named "France," and he was subsequently given a notice that plaintiff would ask leave to amend, in which his name was properly spelled, he is bound by a judgment, though he failed to appear.

4. SAME—SUBSTITUTED SERVICE—POSTING ON FRONT DOOR.

Under Code Va. 1887, § 3207 [Va. Code 1904, p. 1684], authorizing substituted service by posting on the "front door," a return showing service by posting up and leaving on "the door" of defendant's usual dwelling house does not show a valid service.

5. SAME—SERVICE ON WIFE.

Code Va. 1887, § 3207 [Va. Code 1904, p. 1684], authorizes substituted service by delivering a copy at defendant's usual place of abode, and giving information of its purport to his wife or any person found there, "who is a member of his family," and above the age of 16 years. *Held,* that such section should be construed as requiring that the wife should be a member of defendant's family in order to be entitled to receive the process, so that a return showing service by leaving a copy with defendant's wife, but not stating that she was a member of defendant's family, is insufficient.

6. SAME—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

A question as to whether presumptions will be made in aid of a defective return of substituted service is a question of general law, with reference to which decisions of the highest state courts are not conclusive on the federal courts.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

7. SAME—JUDGMENTS—VACATION—MOTIONS—PLEAS.

Where, on scire facias to revive a default judgment in ejectment, it appeared that the returns of service as to two of the defendants were insufficient to show a valid service on them, the judgment will be held void as to them under either their motions to vacate or their pleas of nul tiel record, but subject to the right of amendment of the returns of service in certain cases.

8. SAME—AMENDMENT OF RETURN OF SERVICE.

Where, in ejectment, the returns of service as to two of the defendants were defective, one for failure to show that the door of defendant's abode on which the process was posted was the "front door," and the other for failure to show that defendant's wife, with whom the process was left, was a member of his family, such returns, though made by a private person, might be amended to show the fact, as against defendants themselves, on scire facias to revive a default judgment against defendants.

9. SAME—FEDERAL COURTS—STATE DECISIONS.

Whether a return of substituted service of process in federal courts can be amended is a question of the power of the court, with reference to which it is not bound by state decisions.

10. SAME—DECLARATION—AMENDMENT.

Under Code Va. 1887, § 3253 [Va. Code 1904, p. 1712], authorizing an amendment of plaintiff's declaration before defendant's appearance. where, in ejectment to recover land, the original declaration contained not only a description of the land sued for, but an allegation that defendants were unlawfully withholding the possession thereof from plain-

tiff, he was entitled to amend the description in such declaration before defendants' appearance, whether defendants were personally or constructively served.

11. SAME—DEFAULT JUDGMENT—RULE TO PLEAD—SERVICE—VACATION OF JUDGMENT AFTER TERM.

Code Va. 1887, §§ 2733, 3284 [Va. Code 1904, pp. 1406, 1728], having dispensed with the necessity of a rule to plead before entry of a default judgment in ejectment where there has been no appearance, the fact that no such rule was served, as directed by a court order, was not ground for vacation of a default judgment long after the term at which it was rendered.

12. SAME—STATEMENT OF DAMAGES—FILING—WRIT OF INQUIRY.

Since Code Va. 1887, § 2751 [Va. Code 1904, p. 1412], authorizes the filing of a statement of damages in ejectment after the filing of the declaration, but before defendants' appearance, and before trial, it was proper for the clerk, in entering confirmation of the common order on default, to award a writ of inquiry, though no statement of damages had been filed.

13. SAME—FINAL JUDGMENT.

The office judgment, on default in ejectment, cannot in any case become final without the intervention of the court or jury.

14. SAME.

Where no statement of damages in ejectment was filed, so as to require an inquiry either by the court or jury, as provided by Code Va. 1887, § 2751 [Va. Code 1904, p. 1412], the court was authorized, at the term following the office judgment after default, or at any subsequent term, to enter judgment that plaintiff recover possession of the land sued for, and make such office judgment final, without setting the cause for inquiry at the next term.

15. SAME—WRIT OF INQUIRY.

Where, in ejectment, defendants were in default, and the case was ripe for final judgment without a writ of inquiry at the time an order was entered reciting that, defendants' time to plead having expired, it was ordered that the case be set for inquiry at the next term, and that the clerk notify defendants thereof by mail, the entry of such order was a mere irregularity, and did not affect the validity of a final judgment subsequently entered.

16. SAME—CONSTRUCTION OF ORDER.

Where, in ejectment, there was no necessity of an inquiry, and the court entered an order, after the case was ripe for final judgment, reciting that, defendants' time to plead having expired, the cause was set down for inquiry, such recital was equivalent to an order making the office judgment final.

17. SAME—LEAVE TO AMEND—NOTICE—SERVICE.

Notice of leave to amend a declaration in ejectment being unnecessary, an erroneous judgment of the court that the return of service of such notice was sufficient was immaterial, and could not be considered an error of law sufficient to justify vacation of the final judgment.

18. SAME—ERRORS OF FACT—MATERIALITY—EFFECT.

Defendants in ejectment, not being entitled, as a matter of right, either to notice of an application to amend the declaration, or to service of a rule to plead before judgment, findings of fact by the trial court with reference to the service of such a notice and rule on certain of the defendants, if erroneous, are not material, and therefore are insufficient to authorize a vacation of a final judgment in favor of plaintiff.

19. SAME—SCIRE FACIAS—REPUGNANT PLEAS.

Under Code Va. 1887, § 3264 [Va. Code 1904, p. 1718], authorizing a defendant in any action to plead as many several matters as he shall think necessary, pleas to scire facias to revive a default judgment in

ejectment, denying service of process, declaration, and notices in the manner and at the time and places stated in the returns, and alleging service by an unauthorized person, are not objectionable, though repugnant.

20. SAME—DENIAL OF SERVICE—CONTRADICTING RECORD—COLLATERAL ATTACK.

A plea to a writ of scire facias to revive a judgment denying service of process is a collateral attack on the judgment, on which defendants are not entitled to contradict the record, showing a valid service, by evidence aliunde.

21. SAME—SERVICE—PRIVATE PERSON—AUTHORITY.

Code Va. 1887, § 3207 [Va. Code 1904, p. 1684], providing that any sheriff, sergeant, or constable shall serve a notice within his county, and make return of the manner and time of service, and that such return, or a similar return by any other person who verifies it by affidavit, shall be evidence of the manner and time of service, authorizes service by any person if the return be verified by affidavit.

22. SAME—PLEA.

Under Code Va. 1887, § 3207 [Va. Code 1904, p. 1684], authorizing service by any person, a plea alleging that the person making the service was the paid agent of the plaintiff, employed to compromise with divers claimants of the land sued for and to aid plaintiff in recovering the land, etc., is insufficient.

23. SAME—DEFENSES—FRAUD.

That a judgment in ejectment was recovered by fraud is no defense in a collateral proceeding by scire facias to revive the judgment.

24. FEDERAL COURTS—JURISDICTION—VACATION OF JUDGMENT—FRAUD.

Federal courts of equity having jurisdiction to vacate judgments at law procured by fraud, under Rev. St. U. S. § 723 [U. S. Comp. St. 1901, p. 583], forbidding suits in equity where there is an adequate remedy at law, fraud is no ground for vacation of a default judgment in ejectment, recovered in a federal law court at a former term, in such court.

25. SAME—ACTION AGAINST TENANT—TERMINATION OF LEASE—PLEA.

Where, in ejectment, a landlord claiming title to a part of the premises was not made a party, a plea by his tenant in possession, at the time the action was begun, to scire facias to revive a judgment by default against the tenant, that he was a mere tenant in possession, and that since the judgment his lease had expired, and he had surrendered possession and removed from the land, is insufficient to prevent judgment against him.

26. SAME—SUBSEQUENT POSSESSION OF LANDLORD—ESTOPPEL—RES JUDICATA.

Code Va. 1887, § 2756 [Va. Code 1904, p. 1414], provides that a judgment in ejectment shall be conclusive as to the title or right of possession established in such action on the party against whom it is rendered, and against all persons claiming from, through, or under such party by title accruing after commencement of such action. Held, that where a tenant, and not a landlord, was sued in ejectment to recover land of which the tenant was in possession, and, before execution, the tenant removed and the landlord entered, either personally or by another tenant, neither the landlord nor such subsequent tenant could be considered as claiming through or under the former tenant who was a party to the suit, and the landlord was therefore not bound by the judgment as an estoppel.

27. SAME—OPENING OF JUDGMENT.

Where ejectment was brought by a third person against a tenant, and the landlord had no knowledge of the action in time to have himself made a party, he is entitled to have a judgment against the tenant entered by default opened, and to be allowed to defend on a petition therefor, filed before execution of the writ of possession.

28. SAME—FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP.

Where ejectment was brought in a federal court in which the requisite diversity of citizenship appeared, and, after judgment against a tenant of a part of the tract, his landlord, who was not a party to the suit, ap-

peared and sought to have the judgment opened, the fact that such landlord is of the same citizenship as plaintiff would not oust the court of jurisdiction.

[Ed. Note.—Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

## At Law.

The questions now to be decided originated in an action of ejectment brought in this court at Harrisonburg in 1896 by Henry C. King against the following 17 persons: John Allen, Cyrus Blankenship. Reese Davis, Bazil Dotson, David Dotson, John Dotson, Ransom Dotson, Elijah Estep, H. M. Francis, Montreville Hunt. Robert Hurley, Archibald Justus, S. W. McInturf, Jane Mounts, Levi Woolford, Mary Woolford, and Wm. R. Woolford. The notice attached to the declaration, required by section 2727 et seq., Code 1887 [Va. Code 1904, p. 1404], was addressed to each of the above-named defendants. In the declaration the land sued for is described in the language of the Morris grant (Watkins v. King. 118 Fed. 524, 526, 55 C. C. A. 290). The return of service of the notice and declaration is silent as to S. W. McInturf, Mary Woolford, and Wm. R. Woolford. It is not in the required form as to Cyrus Blankenship and Reese Davis. As to H. M. Francis, a question has been raised because his name is erroneously spelled "France" in these and in some of the papers to be subsequently mentioned. The return as to the remaining defendants is in valid form. The service was made by one Manns, not an officer, who verifies his return. See section 3207, Code 1887 [Va. Code 1904, p. 1684]. In accordance with the notice the declaration was filed, and therewith the above-mentioned return of service, on June 15, 1896. At the second June rules, 1896, the common order was noted as to all the defendants except McInturf and Mary and Wm. R. Woolford. At the first July rules following the clerk's entry in the rule docket was "Common order confirmed and writ of inquiry." Nothing further seems to have been done until July 11, 1898. On that day the plaintiff issued a notice (to be hereafter designated as the notice of July 11, 1898) addressed to each of the above-named 17 defendants, to the effect that he would on July 19, 1898, or as soon thereafter as counsel could be heard, ask leave to file an amendment to his declaration, "giving more specific description of the premises declared for," and that he would also move for a rule requiring the defendants to plead to said declaration. The return of service of this notice does not mention McInturf, Mary Woolford, or Wm. R. Woolford. It is not in the required form as to John Allen, Cyrus Blankenship. Reese Davis, H. M. Francis, Archibald Justus, and Levi Woolford. As to the remaining defendants the return is in strictly regular form. It should be stated here that the name of Montreville Hunt is occasionally spelled in the various papers in this record "Montville," and occasionally "Monteville." The name Justus is occasionally spelled "Justice." But no point has been made as to these differences in spelling.

On July 19, 1898, the following order was entered:

"At an adjourned term of the Circuit Court of the United States of America for the Western District of Virginia, held at the courthouse in Harrisonburg on Tuesday, July 19th, 1898. Present, Hon. John Paul, Judge, presiding.

### "Henry C. King v. Reese Davis et als. Ejectment.

"This day came the plaintiff herein by his counsel in open court, and presented a proposed amendment to his declaration in this cause, and moved the court for leave to file the same; and the said proposed amendment being inspected by the court, and it being deemed proper to be made, and it appearing to the court that due notice of the intention of plaintiff to offer said amendment at this time has been given to defendants Reese Davis, Jane Mounts, Elijah Estep, Monteville Hunt, Robert Hurley, H. M. Francis. Cyrus Blankenship, Bazil Dotson, Ransom Dotson. John Dotson, John Allen, and Archibald Justice, it is ordered that plaintiff have leave to amend his declaration herein in the direction of a more specific description of the premises therein claimed, and to file herein his said proposed amendment, which is accordingly done.

"And it appearing that defendants herein have not heretofore pleaded to said declaration, on further motion of plaintiff, by his counsel, it is ordered that a rule to plead to said declaration be, and the same is hereby, awarded, requiring defendants who were served with notice of said motion as aforesaid to appear and plead to said declaration, as amended, at or before the September next rules of this court, and requiring the other defendants in said case to appear and plead to said declaration at the second rule day after said rule shall have been served upon them.

"July 19th, 1898.                          John Paul, Dist. Judge."

The amended declaration filed under the foregoing order on July 19, 1898, commences: "Now comes the plaintiff above named, and, by leave of court first had, amends his declaration, heretofore filed herein, so far only as relates to the description of the premises therein declared for, by inserting after the description therein the following words, viz., 'which said tract of land is more particularly and more accurately described according to a resurvey thereof made by W. D. Sell, C. E., in the year 1895, under order of this court, as follows, to wit.'" The description that follows is of the location of the Morris grant, as contended for by King in the case of Watkins v. King, 118 Fed. 527, as shown on the plat in that report, by the letters "A. P. H. I. J. M."

Bearing date of July 19, 1898, there are in the papers of this cause many identical copies of a rule to show cause why certain defendants should not plead to the amended declaration. But no attempt appears to have been made to serve this rule.

The next step taken in the cause was the entry on October 31, 1899, of the following order:

"At an adjourned term of the Circuit Court * * * continued and held at the courthouse in Harrisonburg, on Tuesday the 31st day of October, 1899:

"Henry C. King v. Reese Davis et als.     In Ejectment.

"It appearing to the court that the defendants have not appeared or pleaded herein, and time to plead having expired, on motion of plaintiff by his counsel, it is ordered that said cause be set down for inquiry at the next term of this court, and that the clerk notify the defendants hereof, and of the time of holding said term, by sending copies of this order and of the order fixing said term to said defendants by mail.

"Oct. 31st, 1899.                          John Paul, Dist. Judge."

On November 17, 1899, there was filed a copy of the foregoing order, to which was appended the following certificate:

"I, A. K. Fletcher, clerk of the above named court, do certify that on 17th day of November, 1899, I transmitted to each of the defendants in the above cause a copy of the foregoing order and of the order therein referred to as by the above order directed.                   A. K. Fletcher, Clerk."

It may here be stated that by act of September 25, 1890, the regular terms at Harrisonburg are required to be commenced on the Tuesday after the first Monday in June and December. C. 922, 26 Stat. 474 [U. S. Comp. St. 1901, p. 437].

At the December term, 1899, nothing appears to have been done. At the June term, 1900, a jury was sworn to execute the writ of inquiry, and on June 23, 1900, a verdict was returned finding for the plaintiff in fee simple all the land in this state embraced within the lines as claimed by the plaintiff in the amended declaration. The judgment entered on June 23, 1900, reads, so far as now material, as follows:

"This day came the plaintiff by his counsel, and the defendants not appearing or pleading, the court proceeds to execute the writ of inquiry awarded at rules, and thereupon came a jury. * * *

"And thereupon it is considered by the court that the plaintiff, Henry C. King, recover of the defendants Reese Davis, Ransom Dotson, David Dotson, H. M. France, Archibald Justus, Cyrus Blankenship, Samuel W. McInturf, John Allen, Mary Wolford, Wm. R. Wolford, Levi Wolford, Elijah Estep, Monteville Hunt, Bazil Dotson, and Robert Hurley, and each of them, the land and premises in the declaration and verdict described, to the extent of

an estate in fee therein, and that he recover the possession of said premises, together with his costs herein expended, and that the clerk of this court do issue a writ of possession directing the marshal of this court to place the said plaintiff in the possession of said premises.

"June 23, 1900.                                    John Paul, District Judge."

It should be here stated that by an order entered December 2, 1902, the judgment rendered against Samuel W. McInturf, Mary Woolford, and Wm. R. Woolford was annulled, without resistance by the plaintiff, on the ground that no notice had ever been given these defendants.

Nothing further was done until March 27, 1902, at which time, without any order of court authorizing it, the clerk issued a writ of possession. Before any proper effort to enforce this writ was made, my attention was called to the fact that it had been issued. I thereupon suggested to counsel a belief that the issue of the writ was irregular. This view was apparently acquiesced in by plaintiff's counsel, and no further attempt was made to execute the. writ. On March 20, 1903, a writ of scire facias was issued, addressed to Reese Davis, Ransom Dotson, David Dotson, H. M. France, Archibald Justus, Cyrus Blankenship, John Allen, Levi Woolford, Elijah Estep, Monteville Hunt, Bazil Dotson, and Robert Hurley, requiring them to appear at the clerk's office at the second April rules, 1903 (April 20th), to show cause why King should not have execution of his judgment against them. Upon the return of this writ, the clerk, conceiving the return to be proper as to all the defendants named, matured the cause at rules, and on May 11, 1903 (again without action by and without the knowledge of the court), issued another writ of possession. When this fact came to my knowledge I informally directed the marshal not to execute the writ of possession until further order, and advised counsel that I was of opinion that the writ of possession should not have been issued prior to the term succeeding the maturing of the scire facias. At that term (June Term, 1903), at Harrisonburg, by consent, no further action was taken then to transfer the cause to Lynchburg, to be taken up at a special term to commence July 1, 1903. During said last-mentioned term the plaintiff, conceiving the revival of the judgment by scire facias to have been unnecessary, moved that a writ of possession be forthwith issued. This motion was opposed, and was taken under advisement. At the same time the defendants moved that the judgment of June 23, 1900, be vacated. This was opposed, and time taken by the court for consideration. The defendants then each filed pleas of nul tiel record, on which issue was joined, and also offered to file sundry other pleas in writing, to the filing of which objection was made, and these questions were also reserved. Briefs have been sent me by counsel, and it is now my duty to dispose of at least some of the interesting questions thus raised.

M. F. Stiles and Daniel Trigg, for plaintiff.

R. R. Henry and E. M. Fulton, for defendants.

McDOWELL, District Judge (after stating the facts). 1. The motion of plaintiff that a writ of possession be issued without regard to the scire facias should, I think, without considering any other ground, be overruled on the ground that the judgment must be revived before execution can properly be issued. The delay in issuing the writ of possession was not caused by injunction, agreement, or by appellate proceedings. Under these circumstances, at the common law, unless the writ were issued within a year and a day after the judgment, the judgment must be revived. Freeman on Executions, vol. 1, § 27; volume 2, § 470; Adams, Ejectment, p. 346; 7 Ency. Pl. & Pr. 351. The Virginia statute (section 3577, Code 1887 [Va. Code 1904, p. 1910]) fixes the time at one year. It is not necessary to decide that this statute applies in this case as

well as where the judgment is for money; for if not, the common-law rule is left in force.

2. The procedure on the writ of scire facias should conform. as nearly as may be, to the state procedure. Rev. St. U. S. 914 [U. S. Comp. St. 1901, p. 684]. The following Virginia authorities show that under the state practice the action on the scire facias takes the same course as an ordinary action at law in which a writ of inquiry is dispensed with under section 3285, Code 1887 [Va. Code 1904, p. 1729]. It is matured at rules, but the office judgment on default does not become final until there is either a judgment of the court at the following term confirming it, or until the term, or possibly the 15th day thereof, has passed without an order setting it aside. 2 Barton, Law Pr. p. 1034; Russel v. Clayton, 3 Call, 41; Lyons v. Gregory, 3 Hen. & M. 237; Evans v. Freeland, 3 Munf. 119; Day v. Pickett, 4 Munf. 104; Jones v. Doe, 6 Munf. 105; Cosby's Ex'rs v. Bell's Adm'x, 6 Munf. 282; Lang v. Lewis' Adm'r, 1 Rand. 277; Early v. Clarkson's Adm'r, 7 Leigh, 83; Rogers v. Denham's Heirs, 2 Grat. 200; Williamson v. Crawford, 7 Grat. 202; Richardson's Adm'r v. Prince George Justices, 11 Grat. 190; and McVeigh v. Bank, 76 Va. 267.

3. The motion made in behalf of all the defendants to vacate the judgment of June 23, 1900, is now to be considered. Leaving out of view McInturf and Mary and Wm. R. Woolford (as to whom the judgment has heretofore been vacated), the defendants are, as named in the declaration:

(1) John Allen.  
(2) Cyrus Blankenship.  
(3) Reese Davis.  
(4) Bazil Dotson.  
(5) David Dotson.  
(6) John Dotson.  
(7) Ransom Dotson.  
(8) Elijah Estep.  
(9) H. M. France.  
(10) Monteville Hunt.  
(11) Robert Hurley.  
(12) Archibald Justus.  
(13) Jane Mounts.  
(14) Levi Woolford.

Of the above, Jane Mounts and John Dotson are not mentioned in the judgment or in the scire facias. As to these two defendants, at least, no writ of possession can issue now, and we need not further consider them.

Of the remaining twelve defendants, I am of opinion that the return of service of the original declaration and notice is sufficient as to

John Allen.  
Bazil Dotson.  
David Dotson.  
Ransom Dotson.  
Elijah Estep.  

H. M. Francis.  
Monterville Hunt.  
Robert Hurley.  
Archibald Justus.  
Levi Woolford.  

(a) As to H. M. Francis:

The declaration (and notice) is against H. M. France.

The return shows personal service on H. M. France.

The notice of July 11, 1898, is addressed to H. M. Francis.

The imperfect return thereon shows service thereof on the wife of H. M. Francis.

The order of July 19, 1898, recites service of the notice of July 11, 1898, on, and orders a rule to plead against, H. M. Francis.

The judgment of June 23, 1900, is against H. M. France.

The scire facias is addressed to H. M. France.

The service thereof was made on H. M. Francis.

The defendant's name, as shown by his pleas to the scire facias, is H. M. Francis.

Does the mistake in the spelling of the defendant's name nullify the judgment? It is probable that the one-syllable word "France" and the two-syllable word "Francis" should not be held idem sonans. However, I do not understand that it is claimed that the original declaration and notice were not served on the defendant Francis. As the service was personal, and not constructive, the weight of American authority is to the effect that the defendant sued in the wrong name, even if he does not appear, is bound by the judgment. 14 Ency. Pl. & Pr. 300, 301; 1 Black, Judgments (2d Ed.) § 213. And especially should this be the rule where the defendant's name is properly spelled, as here, in the notice that leave to amend would be asked, which notice, it is not denied, reached the defendant.

(b) The return as to Cyrus Blankenship shows an attempt at a substituted service, as follows:

"And on said Cyrus Blankenship, on June 5, 1896, by posting up and leaving upon the door of his usual dwelling place a like copy of said notice and declaration, neither the said Cyrus nor any member of his family over the age of sixteen years being found by affiant in said district."

The objection to this return is that it does not affirmatively show that the papers were left posted on the "front door." Code 1887, § 3207 [Va. Code 1904, p. 1684]. Substituted service of process is a departure from the common law, and the return must affirmatively show a compliance with all the essential requirements of the statutes. 4 Minor, 646; Staunton B. & L. Co. v. Haden, 92 Va. 206, 23 S. E. 285. Indeed, it has been said that everything is to be inferred against such return which the departure from the statute will warrant. 22 Am. & Eng. Ency. (1st Ed.) note 1, p. 183. But, at the least, such return is to be strictly construed, and nothing may be added by intendment. See 22 Am. & Eng. Ency. (1st Ed.) 152, 182, 183, and notes; U. S. v. Telephone Co. (C. C.) 29 Fed. 33; Harris v. Hardeman, 55 U. S. 345, 14 L. Ed. 444; Earle v. McVeigh, 91 U. S. 503, 23 L. Ed. 398; Alexandria v. Fairfax, 95 U. S. 780, 24 L. Ed. 583; Settlemier v. Sullivan, 97 U. S. 447, 24 L. Ed. 1110; Lewis v. Botkin, 4 W. Va. 538; Midkiff v. Lusher, 27 W. Va. 441. Applying these principles to the return as to Blankenship, it must be held that there was no sufficient service as to him.

(c) As to Reese Davis: The return is objected to for several reasons, but I find only one point that strikes me as of much force: There is no affirmative statement in the return that Davis' wife, although found at his usual place of abode, was a member of his family. It is contended that for this reason the return is fatally defective. The statute (section 3207, Code 1887 [Va. Code 1904, p. 1684]), reads:

"* * * Or, if he [the defendant] be not found at his usual place of abode, by delivering such copy and giving information of its purport to his wife or any person found there, who is a member of his family, and above the age of 16 years; or, if neither he nor his wife, nor any such person be found there, by leaving such copy posted at the front door of said place of abode. Any sheriff, sergeant or constable, thereto required, shall serve a notice within his county or corporation, and make return of the time and manner of service, * * *. Such return, or a similar return by any other person who verifies it by affidavit, shall be evidence of the manner and time of service."

So far as I have been able to ascertain, it is impossible to settle the question here presented on authority. In Judge Moncure's opinion in Goolsby v. St. John, 25 Grat. 156, the return was: "Executed on Robert Goolsby by leaving a copy at his house with sister; and on James Rector by leaving copy at his house with wife." In the opinion, which is obiter as to this question, and which contains (page 155) a quotation of the statute in which the punctuation is erroneous, it is said:

"* * * The summons was executed * * * by leaving a copy at the house of each with a sister of one and the wife of the other, without saying that the defendants were not found at their usual places of abode, that the sister in the one case, and the wife in the other, were members of the families of the defendants respectively, and above the age of sixteen years. * * *"

In Judge Anderson's opinion in Smithson v. Briggs, 33 Grat. 183, which is also obiter as to this question, and which gives a quotation of the statute in which the punctuation is erroneous, it is said:

"But if delivered to his wife or other person, the service will not be good unless it be delivered at his usual place of abode, and, if not delivered to his wife, the person to whom it is delivered must not only be over sixteen years of age, but must be a member of his family."

The form given in 1 Barton's Law Practice (2d Ed.) note, p. 271, seems to indicate that the return need not state that the wife is a member of the defendant's family. The form given in 2 Barton's Chancery Practice (2d Ed.) p. 1267, seems to indicate that the return should state that the wife is a member of the defendant's family.

In construing a return of substituted service of process, no presumptions should be made in its favor. Hence we are not at liberty to presume that Davis' wife was a member of his family, although found at her husband's usual place of abode. Therefore the question here is, did the Legislature mean that the clause, "who is a member of his family," should qualify the noun "wife" as well as the noun "person"? The statute is so punctuated as to indicate that such was the intention. If the intent had been otherwise, I think the proper punctuation would be, "* * * to his wife, or any person found there who is a member of his family, and above the age of sixteen years." The punctuation as found in the Code of 1887 is found in the Codes of 1873, 1860, and 1849. See, also, Code 1819, vol. 1, p. 506, c. 128, § 66. It is often said that the punctuation is no part of a statute, and it is certainly true that the punctuation is the most fallible indicium by which to construe a statute. 1 Fed. St. Ann. xl; 23 Am. & Eng. Ency. (1st Ed.) 334. But in a case of grave doubt as to the intent, the punctuation may

aid in determining the question. Sutherland, Stat. Constr. § 232. Is there here any grave doubt as to the intent? I am sure the Legislature would never have provided for constructive service on a defendant's wife except on the assumption that she were a member of his family. And it is not always the case that a man's wife is a member of his family. Where husband and wife have separated and live apart, or have been divorced a mensa, the wife is not, within the intent of this statute, as I think, a member of her husband's family. And it is not impossible that she might be found at his place of abode in his absence, although not a member of his family. Indeed, under such circumstances she would naturally select a time when her husband is absent to visit her children, for instance, at the husband's home. This statute only authorizes service on the defendant's wife in case she be found at his usual place of abode. If service on the wife were allowed at any place, it would be more clear that the words "who is a member of his family" were intended to qualify the word "wife." As service is only allowed at the husband's usual place of abode, we cannot say that it is certain that the qualifying clause applies to the word "wife," unless we assume that the Legislature contemplated and provided for a case where a man's wife, who had ceased to be a member of his family, was found, by a person seeking to serve process, at the husband's usual place of abode. Such a state of facts would very rarely exist. It is possible that the Legislature either never contemplated such a state of facts, or thought it too improbable of occurrence to provide for it. But as such state of facts could exist (and, if it did, the wife, under such circumstances, would be at least as little likely as any stranger to see that the process reached the husband), and as the Legislature may have contemplated its existence, it seems to me that a grave doubt as to the true interpretation of the statute does exist. Such being the case, I must follow the meaning indicated by the punctuation, and hold that as to Reese Davis the return of service is fatally defective because it does not affirmatively show that his wife was a member of his family. In this connection it is proper to say that I have not overlooked the opinion of the majority of the court in Smithson v. Briggs, 33 Grat. 183. Even if not overruled in effect by later cases, it is not binding on this court. It is not an opinion construing a statute of this state; it relates to a question of general law—whether presumptions will be made in aid of a defective return of substituted service. On this question I must follow the authorities hereinabove cited, and hold that presumptions in aid of such returns cannot be indulged. Having reached the conclusion that the returns of service as to Blankenship and Davis are invalid, it follows that, in the present state of the record, under either their motions to vacate the judgment or their pleas of nul tiel record, the judgment should be held invalid. Harris v. Hardeman, 14 How. 334, 14 L. Ed. 444; Earle v. McVeigh, 91 U. S. 503, 23 L. Ed. 398; Alexandria v. Fairfax, 95 U. S. 774, 24 L. Ed. 583, and Id., 28 Grat. 16; Settlemier v. Sullivan, 97 U. S. 444, 24 L. Ed. 1110.

It may be that now, before any order is entered, the plaintiff will

move to allow the return of service as to Blankenship and Davis to be amended. If Manns is alive and within reach, and if he can truthfully make affidavit that he left the declaration and notice for Blankenship posted on his front door, and that the wife of Davis was at the time of the service a member of Davis' family, an interesting question presents itself.

In none of the cases last above cited was there any effort made to have the invalid returns of service corrected, and we do not know what would have been decided had such effort been made. There is a class of cases (of which Staunton B. & L. Co. v. Haden, 92 Va. 202, 23 S. E. 285, and Dillard v Central Va. Iron Co., 82 Va. 734, 1 S. E. 124, are types) where the return cannot by amendment be made valid, as where service on the agent of a corporation was made within less than the prescribed number of days before the return day, or where service was not made on the proper agent or not made at the proper place. With such cases we are not now concerned. Of them it may be truly said that the judgment is void ab initio, and that nothing can be done to make it valid. In the case at bar, if the services were in fact properly made, the want of jurisdiction is apparent and not real. And I am inclined to the opinion that the amendment should be allowed and the judgment held valid, at least so far as these defendants themselves are concerned. In Stotz v. Collins, 83 Va. 423, 2 S. E. 737, a default judgment had been rendered on an invalid return of substituted service of process. After the close of the term the judgment defendant moved that this judgment be vacated. Instead of so doing, the lower court allowed the return to be amended, and dismissed the motion to vacate. This was affirmed by the Court of Appeals. In Shenandoah R. C. v. Ashby, 86 Va. 232, 9 S. E. 1003, 19 Am. St. Rep. 898, an invalid return of service of process was allowed to be amended 13 years after a default judgment founded on such return, Judge Lewis saying:

"The case is not within the principle that proceedings which are void ab initio cannot be rendered valid by amendment, for here the effect of the amendment was not to confer jurisdiction upon the circuit court, but only to perfect the proof of the jurisdiction which it had previously acquired, but of which the evidence prescribed by the statute was wanting."

In Stone v. Wilson, 10 Grat. 533, Judge Moncure said:

"A court from which process is issued may permit the sheriff's return thereon to be amended at any time, even though a suit or motion founded on the original return be then pending, and even though the proposed amendment be inconsistent with the original return and take away the foundation of the suit or motion." Citing Wardsworth v. Miller, 4 Grat. 99; Smith v. Triplett, 4 Leigh, 590; Bullitt's Ex'rs v. Winston, 1 Munf. 269; Rucker v. Harrison, 6 Munf. 181.

This question is, I think, one of the power of the court, and therefore this court is not bound by these Virginia decisions. However, they seem to me sound, and the proposition is not without the abundant support of other authorities. 2 Freeman, Executions (2d Ed.) §§ 358–360, and authorities cited. See, also, Rickards v. Ladd,

137 F.—14

6 Sawy. 40, Fed. Cas. No. 11,804; Ex parte Worley (D. C.) 19 Fed. 586.

It is true that the person who made the service in this case was not an officer, but this fact does not seem to me sufficient to prevent a sworn amendment by him. The Virginia statute (section 3207 supra) puts a private person, who makes affidavit to his return, upon the footing of an officer. In 10 Grat. 533, it is said that a deputy sheriff, other than the one who made the return, may make the amendment. And it is generally held that amendments may be made after the officer has gone out of office, and when no longer under the sanction of his oath of office. Reasonable notice of the motion to allow the amendment should be given, and the court must be satisfied of the truth of the proposed amendment before it will be allowed. The question of amendment addresses itself to the discretion of the court, and is allowed only in furtherance of justice. 2 Freeman, Ex. § 360.

I should say, in passing, that, of the 10 defendants with whom we are now concerned, the service of the notice of July 11,. 1898, is defective as to John Allen, H. M. Francis, Archibald Justus, and Levi Woolford, and good as to the remainder. As to Levi Woolford the return is defective, inter alia, in that it does not show that the notice was left posted; as to Allen, Francis, and Justus, in that, inter alia, it does not state that information of the purport of the paper was given their wives. Consequently the recital in the order of July 19, 1898, that the notice of July 11, 1898, had been given, is erroneous as to Allen, Francis, and Justus. In this order neither David Dotson nor Levi Woolford are mentioned by name.

4. We now reach the motion to vacate the judgment on the two following grounds: (1) That there were such wide departures from the accepted modes of procedure as to nullify the judgment; and (2) there were errors of fact for which the judgment should be vacated.

(a) The Amendment to the Declaration. The first alleged departure from the accepted modes of. procedure was the action of the court in allowing the amended declaration to be filed, followed by judgment in conformity thereto. The allegation in support of the motion to vacate the judgment is that the description given in the Morris grant (which was followed in the original declaration) does not, when properly laid down on the ground, cover the land claimed by the defendants, while the description given in the amended declaration does include the defendants' lands. Treating this allegation as true, can this court properly vacate and annul a judgment of a former term? The judgment. defendants (except Cyrus Blankenship and Reese Davis, as to whom it is not now necessary to discuss this motion) were under the jurisdiction of the court, and had not entered their appearance. The declaration served on them contained not only a description of the land declared for, but also the allegation that they were unlawfully withholding the possession thereof from the plaintiff. The right to allow a proper amendment exists in ejectment as in other actions. See Adams, Ejectment, pp. 226–229; Sedgwick & Wait, Trial of

Title (2d Ed.) §§ 454b and 464; Holmes v. Grabeel (C. C.) 81 Fed. 147; Strader v. Goff, 6 W. Va. 261; Blackwell v. Patton, 7 Cranch, 472, 3 L. Ed. 408; Smith v. Price, 13 S. W. 428, 11 Ky. Law Rep. 896. By section 3253, Code 1887 [Va. Code 1904, p. 1712], the plaintiff may of right amend his declaration before the defendant's appearance. The objection to the motion to vacate the judgment that occurs to me as most vital is that it does not go far enough. Let us first consider the question as to those defendants who were personally served with the original declaration, and then as to those who were constructively served, and who may never in point of fact have received or read the original declaration.

(1) If a defendant receives a declaration (and the necessary notice as to when and where it will be filed), and makes no appearance, can he, after the term at which is entered a default judgment which follows a description furnished by an amended declaration (never served on the defendant), have the judgment vacated, or have an inquiry made into the matter, on the mere allegation that the original description does not in fact, when properly laid down, embrace the land claimed by him, while the description in the amended declaration and judgment does cover his land? It seems to me that he must also allege that he was led by the description in the paper served on him to believe that his land was not embraced in plaintiff's claim, and also, I think, that the description was such that he reasonably could thus construe it. A failure to make such allegation must be treated as an admission that he construed the description as embracing the land claimed by him. A want of power to allow the amendment, in such a case as we have here, must be based on a want of jurisdiction, and this must be predicated on want of notice and opportunity to defend. If the defendant construed, or in reason should have construed, the original description as embracing the land claimed by him, he had notice and opportunity to defend. He was as fully put on notice under such circumstances as if the original declaration had used the same description as that given in the amended declaration. From the admission that the original description was construed by the defendant as embracing his land, it follows that such description was at the most merely imperfect, and, moreover, that the uncertainty or other imperfection therein was latent. I cannot conceive that there is want of power under such circumstances to allow an amendment which merely removes a latent and undiscovered uncertainty in the description.

(2) In case a defendant did not in fact receive and read the original declaration, if it be proper to admit of such assumption, the reasoning is the same as in the case above considered. The inquiry, if it be proper to enter upon such inquiry, is this: Would the description, if the defendant had read it, have reasonably led him to believe that his land was not embraced in plaintiff's claim? The mere allegation that the original description—in the light, doubtless, of facts not discovered until after judgment—does not, when properly laid down, embrace the defendant's land, is not

sufficient. If the original declaration, taken as a whole, was such that it would have reasonably put the defendant on notice that the land claimed by him was declared for, the amendment was properly allowed.

(b) The Rule to Plead. While, by the Codes of 1849 (part 2, p. 559, c. 135, § 12), 1860 (page 610, c. 135, § 12), and 1873 (page 959, c. 131, § 12), a rule to plead had to be served on the defendant in ejectment before a default judgment could be entered against him, the Code of 1887 (sections 2733, 3284 [Va. Code 1904, pp. 1406, 1728]) makes a change in this respect. And, where there has been no appearance, no rule to plead is required. Hence, while it may have been irregular to render judgment without service of the rule to plead, since the order of July 19, 1898, directed that such rule be served, it was not, in my opinion, a gross departure from the ordinary procedure.

But it is argued for the defendants that, as the order of July 19, 1898, directed that a rule to plead be served, they were at liberty to assume that nothing further would be done in the cause until they had been served with such rule. The argument is that a defendant who has been duly served with process is theoretically in court and cognizant of the orders entered; that these defendants (being thus in theory cognizant of the order of July 19, 1898) were at liberty to depart and do nothing further until served with the rule to plead. But it does not seem to me that the extraordinary powers of a court to vacate a judgment long after the term of its rendition can properly be exercised because of an imaginary surprise suffered by the defendant, or because of a mere possibility that a defendant may have been surprised. The defendants do not allege that they were present on July 19, 1898, and do not, as I understand, pretend that they ever heard of the order of that date until long after the final judgment was rendered.

(c) The Order of October 31, 1899. It seems from Goodwyn v. Myers, 16 Grat. 336, and Witten v. St. Clair, 27 W. Va. 766, that the statement of damages claimed by the plaintiff in ejectment (Code 1887, § 2751 [Va. Code 1904, p. 1412]) need not be filed at the time the declaration is filed, but may be filed later, before the appearance of the defendant and before trial. Such being the law, it is proper in every case for the clerk, in entering the confirmation of the common order, to make an entry (as was done in the case at bar) awarding the writ of inquiry. It follows that the office judgment in ejectment cannot in any case become final without the intervention of the court or jury. James River Co. v. Lee, 16 Grat. 424; Smithson v. Briggs, 33 Grat. 182. But in a case such as we have here, where the plaintiff files no statement of damages, and the defendant is in default, I see no reason why the court cannot, at the term following the office judgment or at any subsequent term, enter judgment that the plaintiff recover the possession of the land in the declaration (or amended declaration) described, and thus make final the office judgment. No statement of damages having been filed, no reason for an inquiry of damages either by the court or a jury (Code 1887, § 2752 [Va. Code 1904, p. 1413])

exists; the cause is matured; the defendant is in default; the time has come when the court can properly render judgment for the plaintiff on the right of possession. It follows that on October 31, 1899, the court could legally have rendered judgment. It was, under the circumstances of this case, I think, irregular and unnecessary to set the cause down for inquiry at the next term. But before the defendants can complain that the order of October 31, 1899, was a gross departure from the established modes of procedure, it must appear, as it seems to me, that the court at that time could not legally have rendered judgment against them. The objection to this order is that it decrees that the time allowed the defendants to plead had expired. While this order, and the mailing of a copy thereof to the defendants, is unusual, and while it may have led the defendants to believe that their time to plead had expired, the real question is whether or not it was competent for the court at that time to cut off the defendants' right to plead. If this order had been that the plaintiff recover the land, and even if a copy thereof had been sent by mail to the defendants, they would have no cause of complaint. Now, as the court took the unusual course of setting a cause down for inquiry when there was nothing about which an inquiry could properly be made, this question arises: If the defendants had appeared at the December term, 1899, could they have demanded as of right to be allowed to plead not guilty? It seems to me that they could not. Section 3288, Code 1887 [Va. Code 1904, p. 1733], provides that if a defendant against whom a judgment is entered in the office shall, before it becomes final, appear and plead to issue, the judgment shall be set aside. The statement in the order of October 31st that the time to plead had expired should be treated as equivalent to an order making the office judgment final as to the only question in the case. As there was no statement of damages, there was nothing to be inquired of under the writ of inquiry. The court had on that date the right to enter final judgment in the usual form, and the unusual procedure shown in the order of October 31st was a mere irregularity. I doubt if it was even an error for which the judgment of June 23, 1900, would have been reversed on ordinary writ of error.

But even if I be wrong in this conclusion, it seems to me that we have here no such wide departure from the established modes of procedure as to have deprived the court of its jurisdiction and render the judgment finally entered a nullity. Illustrations of such cases are: Upon a money demand the court has no power to pass sentence of imprisonment. In an action of libel the court cannot order the specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. The sentence of a person charged with felony without the intervention of a jury. The decree of a court of equity upon oral allegations. Windsor v. McVeigh, 93 U. S. 282, 23 L. Ed. 914. The judgment of a trial court after proper removal to the appellate court, or of a state court after removal of the cause to a federal court; or, in some instances, a judgment rendered after the close of a term at which such judgment could law-

fully be rendered; or, in some cases, judgments prematurely rendered, and judgments outside of the scope of the pleadings. Morrill v. Morrill (Or.) 23 Am. St. Rep., note 116 et seq. In Windsor v. McVeigh, 93 U. S. 282, 23 L. Ed. 914, the defendant appeared and offered his answer, and, on the ground that he was a rebel, his answer was stricken from the files. It is true that notice and an opportunity to defend are essential to jurisdiction. But in the case at bar the defendants now in question had notice and full opportunity to defend, and they are, it seems to me, complaining of what is at the most a mere irregularity.

(d) Recital in Order of July 19, 1898. In the order referred to is a recital, which in my opinion is erroneous, to the effect that (inter alia) Allen, Francis, and Justus had been duly served with the notice of July 11, 1898. It is difficult to decide whether this should be treated as a recital of fact, or as a conclusion of law upon consideration of the return of service of said notice as to these defendants. It is possible that the court read the return and came to the conclusion that it was sufficient. If so, the error is one of law; but it cannot be considered one sufficient to nullify the judgment. Notice that leave to amend would be asked was unnecessary. Therefore an erroneous judgment that the return of service of such notice was sufficient would not be of vital moment, and cannot be considered an error of law of such character as to justify a vacation of the final judgment.

### Errors of Fact.

We come now to the alleged errors of fact, which it is contended authorize vacating the judgment.

(1) I shall first consider the case of Allen, Francis, and Justus, as their case differs from that of the other defendants in that, as to them, the order of July 19, 1898, erroneously recites that they had been served with the notice of July 11, 1898. Treating this recital as an error of fact, it is first to be noted that these defendants do not unequivocally allege that the notice did not in fact reach them. But aside from this, I do not regard this error as one sufficient to justify a vacation of the judgment. As before stated, the plaintiff had a right to amend without leave, and without giving notice of his intent to ask leave. Hence the plaintiff unnecessarily gave or attempted to give these three defendants a notice to which they were not entitled. The court, as we assume, being under the erroneous belief that such notice had been given these defendants, proceeded with the case. But what follows from this? The errors in fact for which, on writ of error coram vobis, a court will vacate a judgment, are errors in material matters which prejudiced the defendant, and which, if known in season, would have prevented the rendition of the judgment.

In 5 Ency. Pl. & Pr. pp. 27, 28, it is said:

"The office of the writ of coram vobis is to bring the attention of the court to, and obtain relief from, errors of fact * * * such as, if known in season, would have prevented the rendition and entry of the judgment questioned."

In Bronson v. Schulten, 104 U. S. 416, 26 L. Ed. 797, it is said:

"* * * The writ of error coram vobis * * * was allowed to bring before the same court in which the error was committed some matter of fact which had escaped attention, and which was material in the proceeding."

See, also, 2 Foster's Fed. Pr. (3d Ed.) § 379, and 1 Black, Judgments (2d Ed.) § 306, p. 467. To my mind, if it were a fact that the notice of July 11, 1898, had never reached these defendants, and if this fact had been known to the court, it would have been immaterial, and would not have prevented the rendition of any order subsequently made.

(2) Let us now consider the alleged error of fact relating to the rule to plead. On this question we may consider the case of all ten defendants who were properly served with the original declaration. On this point it seems to me sufficient to say that nothing in the record satisfies me that Judge Paul was under any misconception of fact as to the service of the rule to plead. When a judgment defendant moves that judgment be vacated for error of fact, he assumes the burden of proof, and must show satisfactorily that such error existed. While it is possible that Judge Paul believed the rule to plead had been served on the defendants in accordance with the order of July 19, 1898, it is equally possible that he came to the conclusion that such service was unnecessary, and made the two later orders with knowledge that the rule had not been served. The absence of recitals in the later orders touching the service of the rules to plead, and the unusual direction in the order of October 31, 1899, that a copy thereof be sent the defendants by mail, certainly lend color to the belief that he was not under the impression that the rule had been served. It is also to be noted that, as the service of a rule to plead is not required under the Code of 1887, what has been above said as to the materiality of the error of fact applies also to this point.

It follows from what has been said that the motion to vacate the judgment, so far as founded on the matters above discussed, is as to all the defendants, except Cyrus Blankenship and Reese Davis, without merit.

5. The Pleas to the Scire Facias. It should here be stated that, while John Allen was not properly served with the scire facias, he has appeared and pleaded thereto.

Pleas No. 1. Nul Tiel Record. These pleas, under the circumstances here, raise no question that has not already been considered. 11 Ency. Pl. & Pr. p. 1151. The issue on the pleas of nul tiel record of each of the ten remaining defendants must be decided in favor of the plaintiff.

Pleas No. 2. These pleas consist of a pro forma denial of service of process. They deny that Manns served the declaration and notices in the manner and at the time and places stated in his returns. By section 3264, Code 1887 [Va. Code 1904, p. 1718], a defendant in any action may plead as many several matters as he shall think necessary. This statute is construed to mean that repugnant pleas may be filed at the same time. 4 Minor, p. Consequently the repugnance between pleas 2 and pleas 3 do

make either improper. The question as to plea No. 2 is whether or not, in a case such as we have here, the return of service of process can be contradicted. As to the defendants with whom we are now concerned, the original declaration has on it a sufficient return of service. In other words, the record affirmatively shows the requisite service of process. Wilcher v. Robertson, 78 Va. 617. Moreover, the order of October 31, 1899, which recites that the time to plead had expired, is perhaps to be construed as a recital, in effect, that the defendants in question had been served with process. The plea to a writ of scire facias is a collateral attack upon the judgment sought to be revived. Sharon v. Terry (C. C.) 36 Fed. 346, 1 L. R. A. 572; 1 Black, Judgments (2d Ed.) § 252; Foster v. Crawford (C. C.) 80 Fed. 991. There is, I think, room for no doubt that on collateral attack by a party to the original suit, on a judgment of a domestic court of general jurisdiction, the affirmative showing of jurisdiction made by the record cannot be controverted by evidence aliunde. 12 Ency. Pl. & Pr. 205 et seq.; 12 Am. & Eng. Ency. (1st Ed.) p. 147x; Wilcher v. Robertson, 78 Va. 617. It follows that the objection to filing the pleas No. 2 should be sustained.

In considering the motion to vacate the judgment on the grounds set up in the pleas, I have not felt at liberty to treat pleas No. 2 as unequivocal denials of service of process, because they are contradicted by pleas No. 3. The right to vacate a judgment after the term on evidence that there was no service of process will not, therefore, be now considered.

Pleas No. 3. The matter set up in these pleas is that Manns was the paid agent of the plaintiff at the time he served the process, employed by King to compromise with adverse claimants, to persuade such claimants to compromise, and to aid King in recovering the land. Even assuming that the matter set up in these pleas is of a nature that can be set up as a defense to a scire facias, the point made does not seem to me to present a valid defense. Section 3207, Code 1887, supra, certainly authorizes service by any person, if the return be verified by affidavit. Had the intent been that no one in the employ of the plaintiff could make service, such intent would have been indicated. It is a further argument against the supposition that such could have been the intent, that any private individual serving a notice for a plaintiff is pro hac vice the plaintiff's agent, and almost invariably he is the plaintiff's agent for reward. If this statute, like section 3232 [Va. Code 1904, p. 1703], required that the nonofficial person making service be not a party and not interested in the subject-matter of the controversy, a somewhat nicer question might have been raised. But even if the statute could be thus construed, I doubt if the allegations in pleas No. 3 are sufficient. It is not alleged that Manns had any interest in the subject-matter, or any interest at all other than the sentimental interest of a zealous agent. It is not even alleged that his reward depended upon the success of his efforts to compromise, or to prevent resistance by the defendants to the action of the plaintiff. I ‹am› of opinion that the objection to the filing of pleas No. 3 should

be sustained. It follows from what has been said that it is unnecessary to discuss the point raised by these pleas as ground of the motion to vacate, even assuming that the matter is of such character as could be considered on the motion to vacate.

Pleas No. 4 of Bazil Dotson, Robert Hurley, and Ransom Dotson. These pleas are practically the same. The plea of Ransom Dotson is here set out, as it is the strongest of the three.

"And, for a further plea in this behalf, this defendant says that at the time of the alleged service of a copy of the declaration in ejectment, set forth in the record in this cause, and of the copies of the notices set forth in said record upon this defendant, in manner and form as shown in the returns and affidavits of service thereof, made thereon by A. J. Manns, he, the said A. J. Manns, stated to this defendant that he, this defendant, need not mind about going to court; that they (meaning the plaintiff) would not take our land (meaning the lands of this defendant and the other defendants named in said declaration); that the notice did not amount to anything; and that said Manns then and there advised this defendant to go and see Col. V. A. Wilder, who was then and there the agent and representative of the plaintiff, Henry C. King, and compromise the suit with said Wilder; that that was the best thing that this defendant could do, and the easiest terms that he could get off on; and further stated, then and there, to this defendant, that the plaintiff, King, did not want the land, and would not take it if he got a judgment for it; that he only wanted the timber that was on the land. And this defendant further avers that said A. J. Manns was then and there the agent and employé of the said Henry C. King in serving said declaration and notices, and in making said statements to this defendant.

"And this the defendant is ready to verify.

"Henry & Graham, P. D.

"Sworn to before me by Ransom Dotson this July 1st, 1903.

"W. M. Mauzy, D. C."

Treating these pleas as sufficiently alleging fraud in the procurement of the judgment, I am of opinion that such matter cannot be set up as a defense to a scire facias. In 1 Black, Judgments (2d Ed.) § 493, it is said, in treating of the defense in scire facias: "Nor is it permissible to set up in defense that the judgment sought to be revived was obtained by fraud. * * *" See, also, 2 Id. § 973. In Freeman on Judgments (1st Ed.) § 132, it is said: "Fraud in procuring a judgment cannot be shown by the parties to such judgment in any collateral proceeding." See, also, U. S. v. Gayle (D. C.) 45 Fed. 107; Van Fleet Collateral Attack, § 550 (page 574), and § 558.

There remains to be considered the question on the motion of Bazil and Ransom Dotson and Robert Hurley to vacate the judgment. The third ground of the motion is: "As to the various defendants who have filed pleas herein, for the reason set forth in the said several pleas." Treating these pleas as sufficiently alleging fraud in the procurement of the judgment, the point of inquiry is, has this (common-law) court jurisdiction to vacate its final judgment of a former term on motion alleging fraud in procuring the judgment? In 1 Black, Judgments (2d Ed.) § 321, it is said that every court has an inherent common-law power, even after the end of the term, to vacate a judgment procured by fraud, at the instance of the party injured. See, also, 15 Ency. Pl. & Pr. 234. But as to the federal common-law courts it seems that this statement is inaccurate. I have not examined the question as to the jurisdiction

of the Virginia common-law courts in this respect. If they have such power, it would not follow that the federal common-law courts in this state have it. This is a question of the power of the court, and not a question of procedure. Dabney, Fed. Juris. § 132; Bronson v. Schulten, 104 U. S. 417, 26 L. Ed. 797. So far as I have had time to examine the federal authorities, I am led to believe that a bill in equity is the only method by which these defendants could properly raise the question they seek to present. Phillips v. Negley, 117 U. S. 675, 6 Sup. Ct. 901, 29 L. Ed. 1013, and authorities there cited; Marshall v. Holmes, 141 U. S. 596, 12 Sup. Ct. 62, 35 L. Ed. 870; Grames v. Hawley (C. C.) 50 Fed. 319; Craven v. Canadian R. R. Co. (C. C.) 62 Fed. 171; City v. German Ins. Co., 107 Fed. 56, 46 C. C. A. 144. This conclusion is fortified by this consideration: Rev. St. U. S. § 723 [U. S. Comp. St. 1901, p. 583], forbids suits in equity where there is an adequate remedy at law. The jurisdiction of the federal equity courts to entertain bills to vacate judgments at law procured by fraud seems unquestioned. If the law court rendering such judgment had the power to vacate it, there would be an adequate remedy at law, and a consequent loss of jurisdiction by the equity court. In this connection I should say that I do not desire to be understood as indicating a belief that the facts stated in these pleas would, if set up in a bill, show sufficient ground for vacating the judgment complained of.

Plea No. 4 of Arch Justus. The facts stated in this plea are as follows: Prior to the suit Justus took possession of a tract of 1,235¼ acres as the tenant at will of H. W. Sibley, of New York, the owner; that Justus did not notify Sibley of the suit, and that on June 10, 1903, the lease was terminated, and on said date Justus surrendered possession of said land to Sibley and removed therefrom; and that the defendant never had any interest in the land except as tenant as aforesaid, and that at the time the suit was instituted he did not own any land in Buchanan county.

In the first place, it seems to me that we should not now consider the effect of any ruling on this plea on the landlord, Sibley. He was not a party to the original action, and is not a party to the scire facias. The suggestion, on the one side, that Sibley might by repeated changes of tenants at will keep the plaintiff recovering fruitless judgments in ejectment for an indefinite period, and the suggestion, on the other hand, that Sibley ought not to be forced into the position of a plaintff in ejectment, are not proper to be considered in determining the question here presented, which is only as to King's right to execution as against Justus. Having now eliminated matters not before us, and which tend to confusion of thought, we are prepared to consider the plea of Justus quoad the respective rights of himself and King. The judgment was that King recover of Justus the possession of the entire tract, so far as it lies in Buchanan county, described in the amended declaration. If the plea is intended to assert, so far as Justus is concerned, that he is not now in possession of any part of the land described in the verdict and judgment, I see no reason why he can be injured by the issue of the writ. If the marshal does not find Justus in

possession of any part of the whole tract, nothing will be done of which Justus can complain.

It may be that Justus is now in possession of some part of the entire tract other than the parcel claimed by Sibley. This surmise raises some interesting questions. But I am not at liberty to pursue such surmise. If such is the case, Justus has not so alleged in his plea. If it be true that a purchase by Justus since the judgment of a parcel of the entire tract, other than the Sibley parcel, from one not a party to the ejectment suit, would be a sufficient reason for disallowing a writ of possession as against Justus, we cannot on the present plea consider such question. A plea to a scire facias, like the pleas to other actions, must allege the facts which constitute a defense, and cannot merely suggest the possibility of the existence of such facts. We must therefore consider that Justus alleges by his plea, so far as he himself is concerned, no more than that he is not in possession of any part of the Sibley tract. He may now be in possession of some other part of the entire tract. If such be the fact, since he has pleaded nothing which makes it proper to withhold the writ of possession as against him, the writ should go, and he should be dispossessed. If, for instance, Justus had, pending the action of ejectment, purchased a part of the entire tract from some other party defendant to that action, or is now on the land as a tenant of some party defendant, he should be dispossessed.

While I express no opinion on some very interesting questions that might have been, but which are not sufficiently, presented by this plea, it seems to me that the writ should be issued as against Justus. In this connection it may be advisable to consider the proper steps to be taken by the marshal in executing the writ of possession in case he finds some person in possession of the Sibley tract who is not named in the writ; for instance, Sibley himself, or some subsequent tenant. In either event such person, treating the plea of Justus as true, has gone into possession since the rendition of the judgment. By section 2756, Code 1887 [Va. Code 1904, p. 1414], a judgment in ejectment is conclusive as to the title or right of possession established in such action upon the party against whom it is rendered, and against all persons claiming from, through, or under such party by title accruing after the commencement of such action. But it does not seem to me that Mr. Sibley, or some subsequent tenant of his, can be considered as claiming from, through, or under Justus. When the tenancy of Justus was terminated, his title or right of possession ceased to exist. If Sibley or some tenant of his (other than Justus) is now in possession, it is by a title or right of possession not in any sense derived from Justus.

Where a landlord is not made, and does not become, a party to the suit, I am satisfied, both on reason and by weight of authority, that he is not bound by the judgment, in the sense that it may be pleaded as an estoppel or res judicata against him. 7 Ency. Pl. & Pr. 307, and note 6; Sedgwick & Wait, Trial of Title (2d Ed.) § 537, p. 393; Tyler, Ejectment, p. 632; Howard v. Kennedy's

Ex'rs (Ala.) 39 Am. Dec. 313, note by Mr. Freeman; Samuel v. Denkins, 12 Rich. Law, 172, 75 Am. Dec. 729; Chirac v. Reinicker, 11 Wheat. 280, 6 L. Ed. 474; Rigney v. De Graw (C. C.) 100 Fed. 214. Where the landlord is actually notified of the suit and aids in the defense, although not a party on the record, there is some conflict of decision (2 Black, Judgments [2d Ed.] § 577); but we have no such case here.

Where the tenant defendant remains in possession after judgment, and until the writ of possession is to be executed, it seems that the marshal should put the plaintiff in possession, and that the landlord would have to bring his action to regain possession. Hanks v. Price, 32 Grat. 113. So, too, in case the tenant assigns his lease, or sublets, to another; and in case some third party enters without title, by collusion with the defendant tenant. But where the lease of the defendant tenant expires or is terminated after judgment and before execution, and the landlord or a new tenant under the landlord takes possession, the case is more difficult of determination.

Hanks v. Price, 32 Grat. 113, cannot be given any considerable weight. The point decided was that the landlords could, before an award was entered as the judgment of the court, be admitted as parties and allowed to defend. It was said, arguendo, that, if not so admitted, the landlords would be ousted by writ of possession, and would have to bring their action to recover possession. And it is at least probable that the reasoning of the court is based upon the supposition that the tenant would remain in possession until the writ of possession was executed. In other words, the court does not appear to have considered what would have been the effect of possession being taken by the landlords prior to execution. I have found no other Virginia case which seems to bear on the question here.

In Herman on Executions, p. 532, it is said:

"But if any other person—one not claiming under the defendant, but by or under a different title—be in possession, the officer cannot remove him from the premises under such writ."

In Mr. Freeman's note to Howard v. Kennedy (Ala.) 39 Am. Dec. 313, it is said:

"While, therefore, as we have seen, the general rule is well settled that the defendant, and all those in privity with him, and who enter under and acquire an interest in the premises from or through him subsequent to the commencement of the action, are bound by the judgment therein, and are liable to be dispossessed thereunder, the converse of this rule is also equally well settled that no person in possession of the premises, claiming title thereto prior to or at the time of the commencement of the action, can be dispossessed unless he was made a party to the suit so as to be bound by the judgment. * * * And the same protection will be afforded to a tenant who enters subsequent to the time of the commencement of the action, but not in privity with the defendant, and not under or through him. Rogers v. Parish, 35 Cal. 127; Mayo v. Sprout, 45 Cal. 99; Smith v. Pretty, 22 Wis. 655; Gelpeke v. R. R. Co., 11 Wis. 462; Clark v. Parkinson, 10 Allen, 133, 87 Am. Dec. 628; Johnson v. Fullerton, 44 Pa. 466; Howard v. Kennedy's Ex'rs, 4 Ala. 592, 39 Am. Dec. 307; Hickman's Lessee v. Dale, 7 Yerg. 149."

In 2 Black on Judgments' (2d Ed.) § 577, p. 872, it is said:

"* * * It seems to be conceded that when an action is brought against a tenant by a stranger to recover possession of the premises, without notice to the landlord, and judgment is rendered for the stranger, the possession is adversely and completely changed by virtue of the judgment, and the landlord is so far bound by the judgment notwithstanding his want of notice, although he is not concluded as to the title or future right of possession."

See, also, Sedgwick & Wait, Trial of Title, § 569; Wallen v. Huff, 3 Sneed, 82, 65 Am. Dec. 51; Smith v. Gayle, 58 Ala. 600; Sampson v. Ohleyer, 22 Cal. 200; Wesley v. Tindal (C. C.) 81 Fed. 612; Vance v. Wesley, 85 Fed. 157, 29 C. C. A. 63.

While the foregoing authorities cannot be entirely reconciled, it seems to me that the following view is just, equitable, and supported by sufficient authority: Where the landlord had no knowledge of the action in time to have himself made a party, and especially where the judgment was entered by default, upon petition of the landlord, made before execution of the writ of possession, such judgment should be opened and the landlord allowed to defend. Where the landlord knew of the pendency of the action, and either refused to defend, or defended in the tenant's name, the writ of possession should be executed, notwithstanding the fact that the lease of the tenant defendant has expired or been terminated, and the landlord, or a new tenant, has taken possession. This opinion is already of such length that I shall omit the reasoning leading to this conclusion, and content myself by a reference to some of the authorities supporting the practice of opening a judgment in favor of a landlord. Hanks v. Price, 32 Grat. 112, 113; Adams, Ejectment, pp. 267, 532; Tyler, Ejectment, p. 451; Sedgwick & Wait, § 569; 7 Ency. Pl. & Pr. p. 307, and note 6.

I am therefore of opinion that if the landlord, Sibley, will now, before issue of the writ of possession, petition that the judgment against Archibald Justus quoad the Sibley tract be opened, and that he, Sibley, be allowed to enter his appearance and defend, such motion should be granted. This petition should be accompanied by the affidavit of Mr. Sibley showing that he in fact had no knowledge of the pendency of the action against Justus until after judgment had been rendered. If such petition be filed and the issue thereon be decided in Sibley's favor, the marshal will be directed to leave in undisturbed possession the new tenant on the Sibley tract. The fact that the plaintiff and Mr. Sibley are both citizens of New York will not oust this court of jurisdiction. Phelps v. Oaks, 117 U. S. 241, 6 Sup. Ct. 714, 29 L. Ed. 888; Hardenbergh v. Ray, 151 U. S. 118, 14 Sup. Ct. 305, 38 L. Ed. 93.

Plea No. 4 of Levi Woolford. The facts stated in this plea are: That Woolford was in possession of a tract of land (not described, but a part of the tract claimed by King), at the institution of the suit, as the tenant of S. W. McInturf; that the defendant destroyed the papers served on him by Manns, and did not notify McInturf of the pendency of the action; that defendant surrendered possession of the land to McInturf pending the suit and before judgment; that the land belongs to McInturf, or to his wife,

Cora McInturf; and that the defendant did not, at the institution of the suit or at the time the judgment was rendered, own any land in Buchanan county. From what has been said as to plea No. 4 of Archibald Justus, it follows that, so far as Levi Woolford is himself concerned, the writ of possession should be executed by putting him out of possession if found on any part of the land recovered by the plaintiff.

Neither S. W. McInturf nor his wife was ever served with either the original declaration, or with the notice that leave to file the amended declaration would be asked. Woolford, in this plea, avers that he did not notify S. W. McInturf of the pendency of the action. It may be that the McInturfs had some knowledge of the pendency of an action against some of their neighbors, but as they were not themselves served with any notice, and as this tenant did not notify them, I think it proper to allow McInturf or his wife—if she be the claimant—if so advised, to forthwith petition that the judgment against Woolford, quoad the tract of land formerly leased to Woolford, be opened, and that McInturf or his wife be allowed to defend. This petition should be accompanied by affidavit to the effect that the claimant did not know prior to the judgment that the tenant Woolford had been sued for the recovery of this land.