### ALEXANDRIA v. FAIRFAX.

1. Every corporation has officers, who speak and act for it by authority of law; and some one of them, either by an express statutory provision, or by the nature of his functions, is the proper person on whom the process or notice, which is necessary to bind it in a judicial proceeding, must be served.

2. Where the proceeding to confiscate a debt of the corporation to an individual is, by reason of his absence beyond the jurisdiction, necessarily *in rem*, the service of the process or notice on the corporation, which is requisite to a valid seizure of the debt, should be made upon some one of the officers of the corporation on whom a similar service would bind it in an ordinary suit against it.

3. By the Code of Virginia, such service, in case of a town or a city, may be made on the mayor, or, in his absence, on the president of the council or board of trustees, or, if both be absent, on an alderman or trustee.

4. Service on the auditor of Alexandria, without an appearance by the city or the creditor, did not give the court jurisdiction of the debt which the city owed the creditor; and its decree condemning the debt to confiscation and sale is void.

ERROR to the Supreme Court of Appeals of the State of Virginia.

This was an action of covenant, brought in the Circuit Court

of the city of Alexandria, Va., by Orlando Fairfax, against the city council of Alexandria, to recover the principal of certain bonds, amounting in the aggregate to $8,700, with the arrearages of interest due thereon.

The following is a copy of one of the bonds:

"No. 35.]      ALEXANDRIA CORPORATION STOCK, $5,200.

"There is due from the common council of Alexandria unto Dr. Orlando Fairfax, $5,200, bearing interest at the rate of six per cent per annum from the first day of July, 1858, payable half-yearly, being stock issued in pursuance of an act of the common council of Alexandria, passed on the twenty-third day of July, 1845, the principal of which is redeemable on the first day of January, in the year 1870, and is transferable only at the office of the auditor of the corporation, in person or by attorney.

"Witness the seal of the common council of Alexandria.

{ Alexandria }
{ Corporation. }

"W. D. MASSEY, *Mayor.*
"J. H. McVEIGH,
    "*President of Council.*

"SAM. J. McCORMICK, *Auditor.*"

The defence was that the stock whereof mention is made in the bonds or certificates, and all the right, title, and interest of Fairfax therein, had, with the accrued interest thereon, been condemned to confiscation and sale, under an act of Congress of July, 1862, by a decree of the District Court of the United States for the Eastern District of Virginia, May 4, 1864, and sold by the marshal, who transferred the stock to the purchasers on the books of the auditor of the city. The council recognized this transfer as valid, and issued to the purchasers or their assigns certificates of stock of like tenor and effect. They are still outstanding, and the interest thereon has been paid to the holders of them.

Fairfax was a resident of Alexandria, until the commencement of the rebellion. He then went to Richmond, Va., where he has since resided, taking with him the said bonds or certificates of indebtedness, and he retained possession of them until he brought this suit.

The present controversy turned on the jurisdiction of the District Court. Neither Fairfax nor the city council entered

an appearance to the proceedings which resulted in the decree. The order of seizure which the district attorney of the United States for the district within which the city of Alexandria is situate directed to the marshal, with the return made by the latter thereon, is set out in the opinion of this court, and is, therefore, omitted here. The Circuit Court of the city of Alexandria rendered a judgment against Fairfax, which the Supreme Court of Appeals reversed, and rendered one in his favor. The city council thereupon sued out this writ of error.

*Mr. S. Ferguson Beach* and *Mr. Charles E. Stuart* for the plaintiff in error cited *Miller* v. *United States*, 11 Wall. 268; *Tyler* v. *Defrees*, id. 331; *Cooper* v. *Reynolds*, 10 id. 308; *Brown* v. *Kennedy*, 15 id. 591; *Pelham* v. *Way*, id. 196; *Pelham* v. *Rose*, 9 id. 103; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Voorhees* v. *Bank of the United States*, 10 Pet. 449; *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 173; *Williams* v. *Armroyd*, 7 id. 423.

*Mr. John Johns, Jr.*, and *Mr. C. W. Wattles* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

Orlando Fairfax, a resident of the city of Alexandria, Va., previous to the outbreak of the late civil war, was the owner of about $8,700 of the obligations of said city, which were in the form of bonds, not negotiable on their face, bearing interest at the rate of six per cent per annum, payable semiannually, and having several years to run, and transferable on the books of the corporation. These obligations were called stock of the city of Alexandria. At the beginning of the war, Fairfax left Alexandria, and joined the Confederates at the city of Richmond, and did not return until the war was over.

During his absence, proceedings were instituted to confiscate this stock, and prosecuted to a decree and sale. The marshal made a transfer of it to the purchaser, who received the interest regularly until Fairfax commenced the present suit against the city to recover the interest so paid, and establish his right to the stock.

The Supreme Court of Appeals of Virginia rendered judgment in his favor, and the city sued out this writ of error.

The single question which we shall consider is, whether there was such a seizure of this stock, or of Fairfax's interest in the debt which the city owed him, as gave to the District Court of the United States jurisdiction to confiscate and sell it under the act of Congress on that subject.

All that was done in the way of seizure appears in the following paper issued by the district attorney of the United States to the marshal of the district, and the marshal's return, indorsed on it:—

"OFFICE U. S. DISTRICT ATTORNEY FOR THE EASTERN DISTRICT OF VIRGINIA,
"ALEXANDRIA, VA., Feb. 22, 1864.

"*To the Marshal of the United States for the Eastern District of Virginia.*

"In compliance with general instructions, issued by the Attorney-General, under the act of July 17, 1862, entitled 'An Act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes.'

"I have to direct that you seize all the right, title, and interest of Dr. Orlando Fairfax, in and to eighty-seven shares of the stock of the corporation of Alexandria, in the eastern district of Virginia, together with all the moneys due him, and becoming due from the said corporation, for dividends upon said stock, together with all the improvements, buildings, rights, privileges, appurtenances, and other hereditaments to the same belonging, or in any wise appertaining, and all right, title, interest, and estate of Dr. Orlando Fairfax therein, as proceedings are to be instituted to secure the confiscation of the same to the use of the United States, under the above-entitled act.

"You will report the seizure to me when the same shall have been made.

"L. H. CHANDLER, *U. S. District Attorney.*

(Indorsed as follows :) "No. 88.   Order of seizure.   Dr. Orlando Fairfax."

"UNITED STATES MARSHAL'S OFFICE,
"ALEXANDRIA, VA., Feb. 23, 1864.

"I certify that I have seized the within-described property, and given notice to R. Johnson, Esq., auditor of the corporation of Alexandria, as within directed.

"JOHN UNDERWOOD, *U. S. Marshal.*

"Filed Feb. 24, 1864."

In the present suit, it is among the facts agreed to by both parties, and signed by their counsel as part of the record, that these bonds or certificates of stock were carried by Fairfax to Richmond, and remained in his personal possession during the war. It is, therefore, clear that the marshal made no manual seizure of them, and did not mean to say so by his return, unless he intended to make a false return. It is a fair and reasonable inference from the return and the agreed facts in this case, that what he actually did to constitute a seizure, and what he understood to constitute the seizure of this stock, was " notice to R. Johnson, auditor of the corporation of Alexandria." The words " as within directed " turn our attention to the order of the district attorney, under which the marshal acted. It will be there seen that he was directed to seize the interest of Fairfax in eighty-seven shares of the stock of the corporation of Alexandria, with all the moneys due him and becoming due on said stock, together with all improvements, buildings, &c., to the same belonging. If any buildings were seized as " part of the within-described property," in the language of the marshal's return, nothing has ever been heard of it since. The order was, in legal effect, to attach the interest of Fairfax in this stock.

We are of opinion that *Miller* v. *United States*, 11 Wall. 268, and *Tyler* v. *Defrees*, id. 331, establish the proposition that a valid seizure or attachment of this stock, or his interest in it, under the order of the district attorney, is a sufficient seizure to give the court jurisdiction, provided the order and the marshal's action under it are returned into court as the foundation for proceedings under the libel. But no more can be claimed for what was done as a seizure, or intended as a seizure, than if the order had been a writ under the seal of the court.

We are compelled, then, to inquire whether the simple statement of the marshal, that he had given notice to R. Johnson, auditor of the city, was a sufficient seizure, in face of the conceded fact that he had made no actual or manual seizure of any thing, to give jurisdiction. In determining what it was of which Johnson had notice, it is perhaps fair to infer that the marshal read to him the paper issued by the district attorney. He then had notice that the United States govern-

ment was aware of the existence of the stock or bonds which Fairfax owned; in other words, that the city was indebted to Fairfax, and that proceedings were in this manner initiated for the confiscation of that indebtedness. There can be no doubt that the statute authorized the confiscation of the credits of one who came within its provisions. We have as little doubt that these stocks were credits within its meaning. It is clear that there was a mode of reaching them under the act of Congress, notwithstanding the evidences of Fairfax's right to them were in his pocket, and beyond the reach of the process of the court. If the debt due him had been by an individual, there would have been no difficulty in serving such a process or notice on the debtor as would have subjected him to the orders of the court in regard to it. If Johnson, as an individual, had owed the debt to Fairfax, it is probable that the notice served on him would have been sufficient.

But an incorporated city is not an individual, and service of notice or process on one of its citizens is not service on it. It has its officers, who speak and act for it by authority of law; and some one of these officers, either by an express statutory provision, or by the nature of their functions, is the proper person on whom all notices and processes necessary to bind it by judicial proceedings must be served.

It would seem to be reasonable that in proceedings *in rem* to confiscate property in the absence of its owner, where the seizure of it is a *sine qua non* to the jurisdiction of the court, and where, as in the present case, actual manucaption is impossible, the evidence which supports a constructive seizure should be scrutinized as closely, and be of a character as satisfactory, as that which would subject the party holding the fund or owing the debt which is the object of the proceedings to an ordinary civil suit in the same court. If this be a correct view of the subject, and we think it is quite as favorable to the validity of the judgment of confiscation as can be maintained on sound principle, it is necessary to inquire if service of process on the auditor would authorize a judgment by default against the city in an ordinary action. We are not informed by any thing in this record, or in the brief, of the nature of his functions. We have no reason to believe that it is any part of his

duty to defend actions at law against the city, or to employ counsel for that purpose, or that he had any authority to do so. The word used to describe his office does not imply that, as treasurer, he had in his possession the money or other property of the city. He was not even bound to make record of matters done by or affecting the corporation, as the clerk or secretary of the governing body would be. He was not, probably, a member of the board of councilmen or aldermen, who governed the city, and whose duty it would have been to protect her in such a matter as this.

But we are relieved from any difficulty on this subject by the statute of Virginia, which prescribes, as every law should do under which corporations are organized, the mode of serving process or notice on them. It points out the officers of the corporation on whom such process or notice may be served, and is so liberal in providing for service as to leave no excuse for departing from it by a service on any one else. "It shall be sufficient to serve any process against or notice to a corporation on its mayor, rector, president, or other chief officer, or, in his absence from the county or corporation in which he resides, or in which is the principal office of the corporation against or to which the process or notice is, if it be a city or town, on the president of the council or board of trustees, or in his absence, on the recorder, or any alderman or trustee." Code of Virginia of 1860, p. 707, c. 170, sect. 7.

It appears from these bonds or certificates of debt that there was a mayor of the city. On him, if in the city, the law required service to be made. There is no return that he was absent, nor is any reason given why service was not made on him. There were, as it appears, a council, and a president of that council, and he is specially named in the statute as an officer on whom service may be made. No reason is given why service was not made on him.

But if, against all sound principle, we could indulge in presumptions in favor of this jurisdiction, and suppose that both these officers were absent, notice should have been served on an alderman or councilman, since it appears that there were such officers.

We are not informed whether there was a recorder of that

city. If there was, he was not served. But, by a strange inadvertence, almost the only officer not mentioned in the statute as one on whom the service may be made is the one selected, while all those are omitted whom the law specifically points out as the proper ones; and for the failure to serve them no reason is given.

In the absence of any appearance by Fairfax or by the city in a case where the proceedings against the debtor and the owner of the debt are wholly *ex parte* and by default, and in the absence of actual seizure of any tangible evidence of the debt, we are of opinion that no jurisdiction of that debt was acquired by the notice to the auditor, and on this alone it is supposed to rest.

As in this point we concur with the Court of Appeals of Virginia, its judgment is                           *Affirmed.*

MR. CHIEF JUSTICE WAITE concurred in the judgment.