# PHŒNIX BANK *v.* RISLEY.

IN ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

Argued March 13th, 14th, 1884.—Decided March 24th, 1884.

*Bank—Confiscation.*

The rule that the relation between a bank and its general depositors is that of debtor and creditor, which was laid down in *Marine Bank* v. *Fulton Bank,* 2 Wall. 252, is affirmed and applied to deposits arising from collections on behalf of another bank, a correspondent.

A proceeding under the confiscation acts of August 6th, 1861, 12 Stat. 319, and July 17th, 1862, 12 Stat. 589, for the purpose of confiscating a general deposit in a bank, which was directed against a specific lot of money, and a condemnation and sale under such proceedings, and a payment by the bank to the purchaser at the sale, are no defence to the bank in a suit by an assignee of the depositor for valuable consideration, claiming under an assignment made before the proceedings in confiscation.

The confiscation act of August 6th, 1861, was directed to the confiscation of specific property, used with the consent of the owner to aid the insurrection and had no reference to the guilt of the owner, and could only apply to visible tangible property which had been so used.

The 37th Admiralty Rule, in force before the passage of the confiscation acts, provided a mode for attaching a debt in proceedings for its confiscation by giving notice to the debtor of the proceedings to charge the debtor with the debt and require him to pay it to the marshal or into court; and in the absence of such notice the District Court could obtain no jurisdiction over the debt, and could make no condemnation of it which would constitute a defence in an action by an assignee of the debt for a valuable consideration made before the proceedings in confiscation.

At the outbreak of the war the plaintiff in error was the correspondent in New York of the Bank of Georgetown in South Carolina, and had about $12,000 on deposit to the credit of the latter. On the 20th May, 1861, the Bank of George-town sold and assigned to the defendant in error $10,000 of this deposit. On the 4th January, 1864, the defendant in error demanded payment of the $10,000 of the plaintiff in error in New York. On the 5th January, 1864, proceedings were commenced for confiscating the deposit. The nature of these proceedings are described in the opinion of the court. They resulted in a decree of confiscation and payment of the money by the Phœnix Bank to the purchaser at the sale under con-

demnation.   Risley then sued in the courts of New York to recover the $10,000, and judgment was finally given against the bank in the Court of Appeals of New York, on the ground that the confiscation proceedings were void.   This writ of error was sued out to reverse that judgment.

*Mr. William M. Evarts* for plaintiff in error.

*Mr. John E. Risley* and *Mr. F. A. Wilcox* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Court of Appeals of New York.

The defendant in error recovered against the plaintiff in error the sum of $10,000 and interest by the verdict of a jury, which found, as matter of fact, that the Bank of Georgetown, South Carolina, having a balance with the Phœnix Bank of New York on the 20th day of May, 1861, assigned to Risley, the plaintiff in the State court, $10,000 of that sum, of which the Phœnix Bank had due notice by demand made by Risley January 4th, 1865.   *Risley* v. *Phœnix Bank*, 83 N. Y. 518.

With the questions which arose out of this transaction in the State court we have nothing to do, except as they concern the defence set up by the bank that the money in its hands due to the Bank of Georgetown had been seized, condemned, and paid over to the marshal of the Southern District of New York by virtue of certain confiscation proceedings in the District Court of the United States for that district.

The sufficiency of those proceedings as a defence to the action raises a question of a claim asserted under an authority of the United States, and, as the Court of Appeals sustained the judgment of the inferior court of that State rejecting the defence, the case, as to that question, is cognizable in this court.

The record of the confiscation proceedings in the District Court was rejected by the State court when offered in evidence by defendant, and our inquiry must be directed to ascertain whether, if admitted, it would have been a good defence.

The judge, before whom the jury trial was had, refused to receive the record in evidence, because it showed that the con-

fiscation proceedings, being *in rem*, were directed against certain specific money, which was the property of the Georgetown Bank and which the Phœnix Bank held as a special deposit in the nature of a bailment, and not against the debt which the Phœnix Bank owed to the Georgetown Bank arising out of their relations as corresponding banks ; that this debt being assigned to Risley, the plaintiff was unaffected by the confiscation proceedings, because it was not mentioned in them, and no attempt was made to subject that debt to condemnation.

That the relation of the Phœnix Bank and the Georgetown Bank was that of debtor and creditor and nothing more, has been the settled doctrine of this court, as it is believed to be of all others, since the case of the *Marine Bank* v. *The Fulton Bank*, 2 Wall. 252. In that case, it was said that "All deposits made with bankers may be divided into two classes, namely, those in which the bank is bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to the banking business, in which the depositor, for his own convenience, parts with the title to his money and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount or any part thereof, on demand." "It would be a waste of time," said the court, "to prove that this latter was a debtor and creditor relation." This proposition has been reaffirmed in *Thompson* v. *Riggs*, 5 Wall. 663 ; *Bank* v. *Millard*, 10 Wall. 152 ; *Oulton* v. *Savings Institution*, 17 Wall. 109 ; *Scammon* v. *Kimball*, 92 U. S. 362 ; and *Newcomb* v. *Wood*, 97 U. S. 581.

Mr. Parker, the cashier of the Phœnix Bank, speaking of the time when the marshal served the monition in the confiscation case on him, says that there were no specific funds, separate in kind, in the bank belonging to the Georgetown Bank, and only a general indebtedness in account for money, or drafts remitted, which had been collected. "It was a debt. No specific money or bills the property of the Georgetown Bank."

The libel of information in the District Court commences by saying that it is "against the estate, property, money, stocks, credits, and effects, to wit: against $15,000 (fifteen thousand

dollars), more or less, belonging to the Bank of Georgetown, a corporation doing business at Georgetown, in the State of South Carolina, which said $15,000 is now in *cash*, and is now on deposit in the Phœnix Bank, a corporation doing business in the city of New York, all of which are owned by and belonging to and are the property of the said Bank of Georgetown."

And it is alleged that, by reason of the use of this property in aid of the rebellion and the treasonable practices of the Georgetown Bank, the said property, estate, and effects are subject to lawful prize, capture, and seizure, and should be confiscated and condemned.

The monition, after reciting the libel against $15,000 belonging to the Georgetown Bank, which said $15,000 is now in cash and on deposit with the Phœnix Bank, commands the marshal to attach the said $15,000, and to *detain the same in his custody* until the further order of the court.

The return of the marshal is that he attached $13,000, more or less, deposited in the Phœnix Bank, belonging to the Bank of Georgetown, and gave notice to all persons claiming the same that the court would try the case on January 24th thereafter.

The decree of the court is, that he, the judge, doth hereby order, sentence, and decree that $12,117.$\frac{38}{100}$ belonging to the Bank of Georgetown, of Georgetown, in the State of South Carolina, and now on deposit in the Phœnix Bank, in the city of New York, which said $12,117.38 has been heretofore seized by the marshal in this proceeding, be and the same is hereby condemned as forfeited to the United States.

On this sentence a *venditione exponas* was issued to the marshal, in which he is ordered to sell this $12,117.38, and to have the moneys arising from the sale at the District Court on a day mentioned.

It is not possible to understand that this case proceeded on any other idea than the actual seizure of a specific lot of money, supposed at first to amount to $15,000, but which turned out to be less, and that that lot of money was seized, was formally condemned and ordered by the court to be sold, and the proceeds of the sale brought into court for distribution under the

confiscation law. The specific money is described by apt words, as the property of the Bank of Georgetown, for whose misconduct it is seized, condemned and forfeited.

The very language is used, and no other, that would be if it were twelve hundred horses instead of $12,000, of which the Georgetown Bank was owner, though in the possession of the Phœnix Bank.

There is not the slightest intimation in the libel, the monition, the return to that monition, or in the final decree, that a debt due by the Phœnix Bank to the Georgetown Bank is attached, and no language appropriate to such a purpose is found in the whole proceeding from the beginning to the end. On the contrary, the whole case presents the idea of tangible property, actual cash taken by manual seizure, in the hands of the Phœnix Bank, the ownership of which was in the Georgetown Bank; that these dollars, whether of gold, silver or bank bills, were to be placed in the hands of the marshal and sold, and the sum bid for them brought into court under its order.

In further illustration of this idea, the libel charges that the Bank of Georgetown, the owner of the property libelled, did purchase and acquire said property, and the same was sold and given to it by a person unknown to the attorney, with intent to them to use and employ, and to suffer the same to be used and employed, in aiding, abetting, and promoting the insurrection and resistance to the laws, and in aiding and abetting the persons engaged therein, and that the Georgetown Bank did knowingly use and consent to such use of the property, contrary to the provisions of " An Act to confiscate property used for insurrectionary purposes," approved August 6th, 1861.

It is beyond question that this act was directed to the confiscation of specific property used with the consent of the owner to aid the insurrection, and had no reference to the guilt of the owner, and could only apply to visible, tangible property which had been so used.

If the thing seized and condemned in the District Court was the actual dollars, *they* were the property of the Phœnix Bank, and the loss was its loss, and that did not satisfy the debt which at that time it owed to Risley; nor would it

have been otherwise if the debt had been then due to the Georgetown Bank, for the debt was not seized, but the dollars of the Phœnix Bank.

Counsel for plaintiff in error insists strenuously, however, that it *was* the *debt* which was intended to be seized and condemned, and which constitutes the *res* in the proceeding.

We are not able to see that this view of the matter places the case in any more favorable condition for the bank.

While the manner of seizing ordinary personal property or real estate, for the purposes of confiscation proceedings, under the two acts of Congress on which this libel professes to be founded, namely, the act of April 6th, 1861, and the act of July 17th, 1862, is easily understood and followed, namely, an actual seizure and actual possession by the officer under the monition, it has not been so plain what proceeding should be had in the confiscation of debts due to one who has incurred the penalty of such confiscation and who is not within the jurisdiction of the court.

In this class of cases, where the debt is evinced by a note, bond, or other instrument in writing whose possession carries the right to receive the debt, it may be that the manual seizure of that instrument gives jurisdiction to the court to confiscate it and the debt which it represents.

And we are not prepared to say that the debt itself may not be confiscated in the absence of the bond or note which represents it. But in this class of cases, and in the case of an indebtedness on a balance of accounts where no writing or other instrument represents the debt or ascertains its amount, or carries with it by transfer the right to receive it, it is obvious that something more is necessary than the statement of the marshal that he has attached or seized a certain sum of money.

In the case of *Miller* v. *United States*, 11 Wall. 268, which was a case of confiscation of stock in a railroad company, these difficulties are fully considered, and it is there held that the proper mode of seizure of such stock is by notice of the proceeding and attachment to the proper officer of the company, whose stock is the subject of the proceeding. And the same matter is very fully considered in the subsequent case of *Alex-*

*andria* v. *Fairfax*, 95 U. S. 774, where the sufficiency of the seizure was brought up collaterally in another suit, and the whole proceeding held void, because notice of the seizure or attachment of the debt of the city of Alexandria was not made to the officer of the city named by the statute of the State, though it *was* given to another officer of the city government.

The statute authorizing these confiscation proceedings requires that they be conducted according to proceedings in admiralty as near as may be, and hence libels, monitions, publications, and sentences have been the usual mode of enforcing confiscation. The 37th Admiralty Rule, in force long before this statute was enacted, provides how such seizures shall be made.

" In cases of foreign attachment, the garnishee shall be required to answer under oath or solemn affirmation as to the debts, credits, or effects of the defendant in his hands, and to such interrogatories touching the same as may be propounded to him by the libellant ; and if he should refuse so to do, the court may award compulsory process against him. If he admits any debts, credits, or effects, the same shall be held in his hands liable to the exigency of the suit."

Here was a plain mode of attaching the debt of the Phœnix Bank due to the Georgetown Bank pointed out by the very rule to which the act of Congress referred as prescribing the mode of practice in such cases.

In the first case, above referred to, the court, after referring to the practice in admiralty, said : " These are indeed, proceedings to compel appearance, but they are, nevertheless, attachments or seizures bringing the subject seized within the jurisdiction of the court, and, what is of primary importance, they show that, in admiralty practice, *rights in action, things intangible as stocks and credits,* are attached by notice to the debtor or holder without the aid of any statute."

In the latter case the court said : " We are compelled to inquire whether the simple statement of the marshal, that he had given notice to R. Johnson, auditor of the city, was a

sufficient seizure, in face of the conceded fact that he had made no actual or manual seizure of anything to give jurisdiction to the court. And in determining what it was of which Johnson had notice, it is, perhaps, fair to infer that the marshal read to him the paper issued by the district attorney."

The court, after saying there is no doubt that the stocks were credits and liable to confiscation within the meaning of the act, added:

"It is clear that there was a mode of reaching them under the act of Congress, notwithstanding the evidences of Fairfax's right to them were in his pocket and beyond the reach of the court. If the debt due him had been by an individual, there would have been no difficulty in serving such a process or notice on the debtor, as would have subjected him to the order of the court in regard to it."

The record of the District Court in the confiscation proceedings gives no evidence of any service of notice on the Phœnix Bank, the debtor in this case, and as it was an *ex parte* proceeding in the absence of the party whose property was condemned, the language of the court in *Alexandria* v. *Fairfax* is appropriate, that "where the seizure of it is a *sine qua non* to the jurisdiction of the court, and where, as in the present case, actual manu-caption is impossible, the evidence which supports a con-structive seizure should be scrutinized closely, and be of a character as satisfactory as that which would subject the party holding the fund or owing the debt, which is the object of the proceedings, to an ordinary civil suit in the same court." 95 U. S. at p. 779.

Assuming that, as argued by counsel, this was a proceeding to reach the debt of the Phœnix Bank to the Georgetown Bank, then it could not be the subject of actual manucaption or seizure, and there should be such evidence of service of the attachment or notice on the Phœnix Bank as would be suffi-cient in an ordinary civil suit for that debt.

Nothing of the kind is shown here. No notice of any kind to the Phœnix Bank is shown in that record.

But in the deposition of the cashier of the Phœnix Bank in the present suit, he is shown the monition in the confiscation

case, and says that paper was served on him on the 5th day of. January, 1865, at 11.50 in the morning.

It admits of grave doubt whether the essential fact on which the jurisdiction of the court in the confiscation case depended, not being found in the record, can be supplied in another suit where it is introduced in evidence, by parol proof of that fact.

But if it could be done at all, the monition which was served on the cashier gave no intimation of a proceeding to charge the Phœnix Bank with a debt due from it to the Georgetown Bank, and require it to pay said debt to the marshal or into the court. Nothing in that monition required the bank to answer in regard to such a debt, and the bank made no answer. If it had been called on by that notice to answer, as it certainly would if a debt was claimed of it as being due to the Georgetown Bank, it would have been bound at its peril to have disclosed the assignment of that debt to Risley by the Georgetown Bank, and the demand and notice of Risley to the Phœnix Bank before the commencement of the confiscation proceedings. Indeed it is quite remarkable that no answer or appearance for the Phœnix Bank is made in that proceeding. If the money, the actual cash in the bank vaults, was attached, the bank must have known that the dollars were its dollars, and it should have defended. If it was the debt which was attached, its legal duty to its creditor, whether that was Risley or the Georgetown Bank, was to have stated the facts to the court.

It does not appear to us that any seizure or attachment of the debt due by the Phœnix Bank to the Georgetown Bank was made, by which the District Court, if it intended to do so, obtained jurisdiction to confiscate it.

On the whole case, we are of opinion—

1st. That the specific money in the Phœnix Bank, against which the confiscation proceedings seem to have been directed, and which was condemned, was the money of that bank, and not of the Georgetown Bank, and the loss, if any, is the loss of the Phœnix Bank.

2d. That no such seizure or attachment was made of the debt

due by the Phœnix Bank to the Georgetown Bank, if any such debt existed, when the proceedings were commenced, as would give the District Court jurisdiction of that debt, and no actual condemnation of that debt, or order on the Phœnix Bank to pay it, was made, which can constitute a defence to the present action.

3d. That the right of Risley to recover the debt as assignee of the Georgetown Bank remains unaffected by those proceedings.

*The judgment of the Court of Appeals of New York is affirmed.*