## SUTHERLAND v. GUARANTY TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 265.

1. War ☞12—Alien Property Custodian, after resolution declaring end of war, held not entitled to recover amount of bank deposit held to credit of former enemy alien, but not reported through an honest error (Trading with the Enemy Act, §§ 7, 8, 17 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½dd, 3115½i]; Act July 2, 1921).

Under Trading with the Enemy Act, §§ 7, 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½dd), where bank through honest error reported to Alien Property Custodian a lesser amount as held to credit of enemy alien than it actually had, and on demand paid over that amount, *held*, on discovery of error after Joint Resolution Cong. July 2, 1921, declaring war ended, Alien Property Custodian, proceeding under section 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i), could not recover or enforce payment of amount of the error as against intervening rights of alien, no longer an enemy, a formal demand being an essential prerequisite to such proceeding, and no longer permissible, nor was the original demand, which had been satisfied by payment, sufficient.

2. War ☞12—Demand by Alien Property Custodian was essential prerequisite to proceeding to compel payment of money owed or held to credit of enemy alien (Trading with the Enemy Act, §§ 7, 8, 17 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½dd, 3115½i]).

Under Trading with Enemy Act, §§ 7, 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½dd), a demand for payment of amount owed or held to credit of enemy alien was essential before proceeding under section 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i) was authorized.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding by Howard Sutherland, as Alien Property Custodian, to recover of the Guaranty Trust Company of New York money held to credit of the Wiener Bank Verein, a former enemy alien. Decree for petitioner, and respondent appeals. Reversed.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Louis Manheim and Clair B. Hughes, both of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City, and Dean Hill Stanley and E. N. Cherrington, Sp. Asst. Attys. Gen., for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. [1] This proceeding was commenced on March 4, 1925, by a petition of the Alien Property Custodian, seeking a decree that there be paid to him $53,751.89 pursuant to the provisions of the Act of Congress approved October 6, 1917, known as the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.). The petition asserted that this sum of money was on deposit with the appellant on May 31, 1918, when a formal demand was served upon it by the appellee for such funds. The Wiener Bank Verein is a banking institution of Austria and had these funds on deposit with the appellant in New York. In this banking relation, debits and credits were entered on the books of the appellant as moneys were received and paid out. The effective date of the Trading with the Enemy Act, October 16, 1917, found a balance due the Wiener Bank Verein, and by section 7a of the act it became the duty of the appellant, under "such rules and regulations as the President may prescribe," to report the facts as to this deposit to the Alien Property Custodian by written statement under oath, containing such particulars as said Custodian shall require.

By section 7c it is provided that, "if the President shall so require, any money" owing to an enemy, "which the President after investigation shall determine is so owing," shall be paid to the Alien Property Custodian. By section 7d it is provided: "If not required to pay, * * * under the provisions of subsection (c) hereof, any person not an enemy or ally of enemy who owes to * * * an enemy or ally of enemy * * * any money * * * may, at his option, with the consent of the President, pay * * * to the Alien Property Custodian said money * * * under such rules and regulations as

the President shall prescribe." By section 17 the District Courts of the United States were granted jurisdiction for the making of de-crees to carry out these provisions.

On October 12, 1917, by executive order, the President vested in the Alien Property Custodian the executive administration of all the provisions of sections 7a, 7b, 7c, and 7d of the act, which included the power to require reports and to require the payment to himself of any moneys owing to an enemy or ally of an enemy "which, after investigation, said Alien Property Custodian shall determine is so owing." By executive order of February 26, 1918, it was provided: "Any requirements made by the Alien Property Custodian pursuant to section 7, subsection (c), of the Trading with the Enemy, may be known as and called a demand."

By section 2a of the same executive order it is provided that the Custodian may make demand for the payment of any money belonging to or held for an enemy which the Custodian after investigation shall determine is so owing. It provided that the Custodian may qualify or limit any such demand in such manner and to such extent as he may in any case see fit. And by section 2c of the same executive order, when a demand shall be made and notice thereof given, such demand and notice shall forthwith vest in the Custodian the right, title, interest, and estate in and to and possession of the money or other property demanded.

On December 3, 1917, the appellant reported, as required, to the Custodian the status of the account between it and the Wiener Bank Verein, which showed a total due to the Wiener Bank Verein of $6,710.17. Thereafter, on May 21, 1918, the Custodian served its demand, which recited that "by virtue of the authority vested in me by said act and by said executive orders, after investigation to determine that * * * Wiener Bank Verein, * * * whose address is Vienna, Austria, is an enemy, and has a certain right, title, and interest in all that certain money and property mentioned and particularly described in your report to the Alien Property Custodian, dated December 3, 1917, as owing or belonging to, or held for, by, on account of, or on behalf of, or for the benefit of the 'person' hereinabove mentioned, together with all interest accrued thereon to date of payment to the Alien Property Custodian, and all dividends or accumulations thereon whatsoever now in your possession or which may hereafter come into your possession." It further required that the money and property be paid to him. Carrying out this mandate,

the appellant paid over the principal and interest, amounting to $7,960.50.

The war with Austria ended by General Resolutions of Congress on July 2, 1921 (42 Stat. 105), and the treaty of peace was ratified on August 24, 1921, which changed the status of the Wiener Bank Verein as an alien enemy. After the war thus ceased, it appeared that errors had been made in the books of the appellant, and that there was a larger sum ($53,751.89) actually due to the Wiener Bank Verein. It is this difference that the appellee now seeks to recover.

On February 13, 1924, the Wiener Bank Verein instituted an action against the appellant in the Supreme Court of the state of New York for the recovery of this sum now claimed by the Alien Property Custodian. This action was removed to the District Court of the United States for the Southern District of New York. An answer was interposed, setting up as a defense that the moneys were claimed by the appellee, and that the appellant had no interest other than to pay it to the rightful owner.

The District Court held below that, under section 8 of the act, the appellant was required to report all indebtedness of the enemy, and the fact that an error had been made in calculating the net amount and stating it inaccurately in the report "cannot now entitle respondent to withhold such sum as was actually owing to the enemy at the time of respondent's report." But pursuant to the statute, and the regulations made by the executive order under the statute, it was necessary that a demand be served upon the appellant for payment. Having made a demand in the language referred to, and the appellant having responded by payment, all the provisions of the Trading with the Enemy Act were met so far as the appellant was required to take action. The report filed by the respondent, although inaccurate, was in compliance with the provisions of section 7a of the act. It states the amount due as $6,710.-70, with interest. It was only after the war, when reconcilement of the cross-accounts and corrections of errors were made, that it developed that a materially larger sum was owing. The report at the time was made in honest mistake, and there is no claim that there was fraud or deception.

[2] The demand of the Custodian, in the precise language referred to, was met by payment. The appellee might have investigated pursuant to the provisions of the executive orders, and if the error was found have made a further demand. Such demand was neces-

sary during the period of the war, or at least prior to the peace between the respective countries. But no further demand was made. It must at all times be considered that the property vests in the United States only when the demand is served. A demand is the effective step, and is essential before the appellee may proceed under section 17 of the Trading with the Enemy Act. In re Miller-Schaefer (C. C. A.) 281 F. 764; Miller v. Rouse (D. C.) 276 F. 715. It is only after the demand is made that the possessor or holder of the property must comply with it. Central Union Trust Co. v. Garvin, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403.

There is nothing in the act that makes it compulsory that the appellee sue or make any demand at all, but it is prescribed in section 7c that, only in case the President should so require, any money owing to an enemy, and which the President after investigation should determine as so owing, was required to be paid to the Alien Property Custodian. The power to require and determine is vested in the Custodian by executive order. The executive authority thus lodged in the Custodian authorized him to qualify or limit any such demand in such manner and to such extent as he might in any case see fit. It is at all times within the discretion and within the executive power to revoke prior action, and to make a further demand, but this must be made prior to peace between the countries.

When the war ended, authority to do so ceased. Other rights of the Wiener Bank Verein have intervened. Under section 7e of the Trading with the Enemy Act, "Any payment * * * made to the Alien Property Custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of same." The present proceeding is purely possessory in its nature. The decree, being based upon the demand, can be of no greater effect than the demand itself. It decides no issue as between the appellant and the Wiener Bank Verein. Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858. After the war ended and peace was restored, the Wiener Bank Verein was no longer an enemy, but a citizen of a foreign country, and the power to seize and sequester ended with the war, as did the power on the part of the appellant to make voluntary payment under the Trading with the Enemy Act. When this proceeding was instituted, it was too late to direct payment to the appellee of the moneys held by the appellant.

Decree reversed.