## HUNTER v. CENTRAL UNION TRUST CO. OF NEW YORK et al.

(District Court, S. D. New York. December 31, 1926.)

1. War ⬤→12—Determination that specific property is that of enemy is prerequisite to the seizure by Alien Property Custodian (Trading with the Enemy Act, § 7(c), as amended by Act Nov. 4, 1918 [Comp. St. § 3115½d]).

Under Trading with the Enemy Act, § 7 (c), as amended by Act Nov. 4, 1918 (Comp. St. § 3115½d), authorizing the President to require to be turned over to the Alien Property Custodian money or property which he, "after investigation, shall determine" to be money or property of an alien enemy, and the presidential order delegating such authority to the Custodian, there must be an administrative determination that certain specific property is owned by or held for the benefit of an enemy or ally of an enemy as a prerequisite to the seizure of such property, either actual or symbolical, by demand.

2. War ⬤→12—Paper served by Alien Property Custodian on trustee holding securities held not a "demand," which operated as symbolical seizure of any of the securities.

A paper served by the Alien Property Custodian on a trust company holding in trust railroad securities, requiring it to hold the securities and, on receiving information that any of them are owned by or held for the benefit of enemies, or on notice from him, to transfer the same to the Custodian, but which contains no determination that the owners of any of the securities are alien enemies, held not a "demand," which operated as a symbolical seizure of any of the securities.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demand.]

3. War ⬤→12—Alien Property Custodian not necessary party to suit to recover property not in his possession (Trading with the Enemy Act, § 9 (a), as amended by Act March 4, 1923 [Comp. St. § 3115½e]).

A suit against the Alien Property Custodian to recover property must be under Trading with the Enemy Act, § 9 (a), as amended by Act March 4, 1923 (Comp. St. § 3115½e), and may only be brought in the Supreme Court of the District of Columbia, or the District Court of the district in which claimant resides; but where the property in suit has not been seized by the Custodian, but is in legal possession of another, the Custodian is not a necessary party, and the suit may be brought in any court having jurisdiction of the parties and subject-matter.

In Equity. Suit by Henry F. Hunter against the Central Union Trust Company of New York and others. On motions to dismiss bill. Sustained as to defendant Howard Sutherland, Alien Property Custodian, and denied as to other defendants.

Hays, Hershfield & Wolf and John A. Mabsen, all of New York City (Ralph Wolf

and Edwin D. Hays, both of New York City, of counsel), for plaintiff.

Emory R. Buckner, U. S. Atty., of New York City, and Dean Hill Stanley, Sp. Asst. Atty. Gen., for Alien Property Custodian.

White & Case, of New York City, for defendant Bankers' Trust Co.

Larkin, Rathbone & Perry, of New York City, for defendant Central Union Trust Co. of New York.

GODDARD, District Judge. The questions here arise upon motions by the respective defendants to dismiss the bill of complaint. Plaintiff, a citizen and resident of the state of Illinois, brought the action to establish his right to 40 shares of the preferred stock of the Missouri Pacific Railroad Company, held in trust by the defendant the Central Union Trust Company, which the said company refuses to deliver to him solely because of a claim on the part of the Alien Property Custodian, arising from the service by the Alien Property Custodian of an alleged demand upon the Central Union Trust Company for the stock, which reads as follows:

"I, Francis P. Garvan, Alien Property Custodian, duly appointed, qualified, and acting under the provisions of the act of Congress known as the Trading with the Enemy Act, approved October 6, 1917, and the amendments thereto and the proclamations and executive orders, after investigation, do determine that those certain voting trust certificates deposited with you by Otto H. Kahn, James N. Wallace, and Robert Winsor, as voting trustees, issued by said trustees in respect to those certain shares of stock of the Missouri Pacific Railway Company, issued by the said company to the said trustees, said voting trust certificates being issued and deposited with you for the benefit of the holders of certain deposit certificates issued by Deutsche Treuhand Gesellschaft, Hamburg, Germany, to the owners of those certain forty-year 4 per cent. gold bonds of the Missouri Pacific Railway Company deposited with said Deutsche Treuhand Gesellschaft by said owners, in so far and to the extent that said deposit certificates were on or after April 6, 1917, held by, on behalf of, for the benefit of, or for the account of, a person, firm, or corporation at that time, or at any time thereafter a resident and citizen or subject of Germany, German Austria or Hungary, are owned by and belong to, and are by you held for, on account of, on behalf of, or for the benefit of an enemy or ally of enemy not holding any license granted by the President.

"I, as such Alien Property Custodian, do hereby require that the same be by you conveyed, transferred, assigned, and delivered to me, as Alien Property Custodian, to the extent hereinabove mentioned, to be by me held, administered, and accounted for as provided by law.

"As such Alien Property Custodian, I do further require that said conveyances, transfers, assignments, and deliveries of said certificates be made by you in so far and whenever you shall receive information establishing that any particular certificate or certificates of deposit of stock of the class above mentioned belong to and were owned by or were held on behalf of, or for the benefit of, or for the account of, a resident and subject or citizen of Germany, German Austria, or Hungary on or at any time after April 6, 1917, or in so far and when I as Alien Property Custodian shall notify you in writing that any particular deposit certificate or certificates were so owned or so held.

"As such Alien Property Custodian, I do hereby further require that you hold all voting trust certificates issued in respect to deposit certificates issued by Deutsche Treuhand Gesellschaft to the owners of the above mentioned bonds and to refrain from transferring or delivering said voting trust certificates to any person, firm or corporation without the previous consent in writing from me as Alien Property Custodian. I do hereby further require that you note the substance of this demand and the requirements thereof upon your books and records.

"Witness my hand and seal this twenty-third day of January, 1920.

"Francis P. Garvan,
"Alien Property Custodian."

The facts out of which plaintiff's right to the said 40 shares of the preferred stock of the Missouri Pacific Railroad Company arose, as alleged in the complaint, are as follows:

In 1914 the Missouri Pacific Railway Company got into financial difficulties. Committees were thereupon formed to represent holders of the various securities which had been hitherto issued by the railway company. Among its securities then outstanding were certain bonds, known as 40-year 4 per cent. gold bonds of 1905, due March 1, 1946, which, because of default of the interest, were declared due February 1, 1916, and which are hereinafter referred to as 4 per cent. gold bonds. Committees representing the various security holders arranged a plan of reorganization on July 25, 1916. This plan included a provision that the holders of

the 4 per cent. gold bonds of the Missouri Pacific Railway Company, who agreed to the plan by depositing their securities thereunder, were to receive, upon the consummation thereof, 5 per cent. preferred stock of the par value of the bonds so deposited. This preferred stock was to be issued upon a reorganization of the Missouri Pacific Railway Company, or upon the formation of a new company to be organized to take over the properties of the old Missouri Pacific Railway Company.

Under the plan the Bankers' Trust Company was appointed depository of the 4 per cent. gold bonds with the right to name subdepositories and appointed the Deutsche Treuhand Gesellschaft of Hamburg, Germany (hereinafter referred to as D. T. G.) as one of the sub-depositories. The depository and sub-depository issued to the depositors negotiable certificates. Sufficient security holders having deposited their securities, the proposed plan of reorganization became effective, and a new railway company was formed known as the Missouri Pacific *Railroad* Company which took over the properties of the old Missouri Pacific *Railway* System and issued new certificates in accordance with the provisions of the plan. The 5 per cent. preferred stock of the new company was issued to the organization managers and placed in a voting trust, and voting trust certificates covering shares of such preferred stock sufficient to take care of the said 4 per cent. gold loan bonds were deposited indorsed in blank, with the Central Union Trust Company, in trust for delivery to the holders of certificates of deposit representing the deposited 4 per cent. gold bonds; 10 such shares of stock to be delivered upon the surrender and cancellation of the bonds and certificates of deposit covering a $1,000 bond.

On January 22, 1920, the then acting Alien Property Custodian served upon the Central Union Trust Company the paper or alleged demand (set forth above) by which the Alien Property Custodian now claims he purported to seize voting trust certificates covering shares of stock of the Missouri Pacific Railroad Company issued by the company to trustees and deposited with the Central Union Trust Company for the benefit of deposit certificates issued by D. T. G. to the owners of the 4 per cent. gold bonds of the Missouri Pacific Railway Company deposited with the said D. T. G., "in so far and to the extent that said deposit certificates were on or after April 6, 1917, held by, on behalf of, for the benefit of, or for the account of a person, firm, or corporation at that time or at any time thereafter a resident and citizen or subject of Germany, German Austria, or Hungary, are owned by and belong to and are by you held for, on account of, on behalf of, or for the benefit of an enemy or ally of enemy not holding any license granted by the President, * * * further require said conveyances * * * be made by you in so far and whenever you shall receive information establishing that any particular certificate * * * belong to * * * a citizen of Germany, * * * or in so far and when I shall notify you * * * that any particular certificate or certificates were so owned. * * * ",

It appears that the Custodian took no further steps relative to the alleged seizure; never notified the Central Union Trust Company that any of the certificates were owned by any German or other enemy; that the Central Union Trust Company never received information that any of said certificates were held for a German or other enemy. Plaintiff further alleges that he is the owner of certificates on deposit numbered 0757, 0791, 0794, and 0802 issued by the D. T. G. in respect to four $1,000 4 per cent. gold bonds of the Missouri Pacific Railway Company, numbered 3116, 10363, 1419, and 15029, which had been deposited with the D. T. G. prior to June 8, 1917; that the said certificates of deposit now owned by him had been transferred and retransferred divers times to divers persons before they were acquired by plaintiff; that plaintiff is ignorant and is unable to ascertain the nationalities of the owners of said certificates at the time of the serving of the alleged demand by the Custodian; that plaintiff presented the said certificates of deposit prior to the commencement of this action to the Bankers' Trust Company and to the Central Union Trust Company, and demanded delivery to him of 40 shares of preferred stock of the Missouri Pacific Railroad Company, and, since the voting trust had terminated prior to said demand, he was entitled to stock, instead of voting trust certificates; that the said trust companies refused to deliver the stock to him solely because of said alleged demand of the Alien Property Custodian.

Plaintiff's bill of complaint prays for judgment decreeing that the defendant the Central Union Trust Company holds in trust for him, as owner of the said certificates of deposit of the D. T. G., 40 shares of the preferred stock of the Missouri Pacific Railroad Company and all the dividends paid or which may have accumulated, and that it be

adjudged that the Alien Property Custodian has no right, title, or interest to the said shares or dividends or certificates of deposit, and that a decree be entered adjudging and decreeing that the Central Union Trust Company account to the plaintiff for the said 40 shares and any dividends thereon and deliver same to plaintiff.

The defendant Howard Sutherland, as Alien Property Custodian, has filed a motion to dismiss the bill of complaint upon the following grounds:

"(1) It appears affirmatively from the allegations of the bill of complaint that this court is without jurisdiction to pass upon the questions and issues involved in this suit, in that the plaintiff herein is a citizen and resident of the state of Illinois.

"(2) It does not appear from the allegations of the bill of complaint that the plaintiff herein has filed with the Alien Property Custodian a notice of his claim under oath and in such form and containing such particulars as the said Custodian might require or that the plaintiff herein has filed any notice of claim with the Alien Property Custodian pursuant to the provisions of section 9 of the Trading with the Enemy Act as amended.

"(3) It does not appear from the allegations of the bill of complaint that the plaintiff herein became the equitable owner of the property involved in this suit prior to April 6, 1917.

"(4) It does not appear from the allegations of the bill of complaint that the plaintiff herein became the owner of the property involved in this suit prior to January 23, 1920, the date of the determination and demand of the Alien Property Custodian, which is Exhibit C to the bill of complaint herein.

"(5) It appears affirmatively from the allegations of the bill of complaint that the property involved in this suit was seized by the Alien Property Custodian prior to the date the plaintiff acquired any interest, right, or title therein.

"(6) It does not appear from the allegations of the bill of complaint that the plaintiff has any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him under the Trading with the Enemy Act.

"(7) The plaintiff has not stated facts sufficient to entitle him to equitable relief under section 9 of the Trading with the Enemy Act, as amended, or under any other

17 F.(2d)—12

provision of the Trading with the Enemy Act."

The defendants the Central Union Trust Company and the Bankers' Trust Company also ask for a dismissal of the bill on the grounds specified by the Alien Property Custodian, eliminating the grounds specified as (1), namely, lack of jurisdiction. Both of the trust companies are corporations organized under the laws of the State of New York and resident within the Southern district of New York. The trust companies themselves assert that they have no interest in the controversy, other than to see that the property is delivered to the proper party.

[1] Concededly, under the allegations of the complaint, the plaintiff is entitled to the said 40 shares of preferred stock of the Missouri Pacific Railroad Company held by the Central Union Trust Company, unless there has been a seizure by the Alien Property Custodian, and the principal question to be decided is: Was there a demand or symbolical seizure in accordance with the terms of the Trading with the Enemy Act?

Section 7(c) of the act (as amended November 4, 1918) provides:

"(c) If the President shall so require any money or other property * * * owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian. * * *"

"Whenever any such property shall consist of shares of stock or other beneficial interest in any corporation, * * * it shall be the duty of the corporation, * * * issuing such shares or any certificates or other instruments representing the same or any other beneficial interest to cancel upon its, his, or their books all shares of stock or other beneficial interest standing upon its, his, or their books in the name of any person or persons, * * * who shall have been determined by the President, after investigation, to be an enemy or ally of enemy, and which shall have been required to be conveyed, * * * to the Alien Property Custodian * * * and in lieu thereof to issue certificates or other instruments for such shares or other beneficial interest to the Alien Property Custodian or otherwise, as the Alien Property Custodian shall require." Comp. St. § 3115½d.

"The President, by orders of October 12,

1917, and February 26, 1918, committed to the Alien Property Custodian the executive administration of section 7(c), including the power to determine after investigation whether property was enemy-owned, etc., and to require the surrender or seizure of such as he should determine was so enemy-owned." Stoehr v. Wallace, 255 U. S. 239, at page 244, 41 S. Ct. 293, 295 (65 L. Ed. 604); Sutherland v. Guaranty Trust Company of New York (C. C. A.) 11 F.(2d) 696.

The order of February 26, 1918, also provided:

"Any requirement made by the Alien Property Custodian pursuant to section 7, subdivision (c) of the Trading with the Enemy Act may be known as and called a demand"—so that the Alien Property Custodian may make an effective symbolical seizure, providing the preliminaries required under the statutes are complied with.

[2] The customary form of demand employed by the Alien Property Custodian does contain a determination that a named person, firm, or corporation is an enemy, and is the owner of specific property which the one upon whom the demand is served is required to deliver to the Alien Property Custodian.

In the case at bar, the alleged demand contains no determination that any particular owner or individual is an enemy; it does not determine that any specific property be turned over to the Alien Property Custodian. The essentials called for under the statute are lacking. The proceeding for the seizure of property in time of war necessarily must be summary in view of the need for quick action, but the statutes do protect the property owner to the extent that before such a seizure takes place, there must be an administrative determination that certain specific property is owned by or held for the benefit of a person or firm who is determined to be an enemy or an ally of an enemy. I think it is clear, from the statutes and from the cases construing them, that such determinations are prerequisites to the seizure whether the seizure be actual or symbolical.

The direction to the trust company in the alleged demand to turn over the said stock "in so far and to the extent that the said deposited securities were * * * held by, on behalf of, for the benefit of, or for the account of any person, firm or corporation at that time or at any time thereafter a resident and citizen of subject of Germany" etc., * * * was not a determination, for the very things that should have been determined by the Alien Property Custodian were left undetermined, namely that certain specific property was owned by a person or firm

who was determined to be an enemy. At the most, there was a direction by the Alien Property Custodian for the Central Union Trust Company to determine on presentation of the certificates whether or not they were owned by an enemy at the time of the demand or thereafter prior to the termination of the war. If there was any determination, it would fall upon the trust company, and that would be a delegation of the power by the Alien Property Custodian, which he had no right to delegate. Of course, a determination that the securities are enemy-owned to the extent that they are enemy-owned is merely going around a circle, and is no determination at all. Furthermore, it would be practically impossible for the trust company to have complied with the alleged demand because of the lack of specific description of the property to be turned over.

If such a demand as the one now under consideration was valid, then it would seem as though the Alien Property Custodian might have served a similar blanket alleged demand upon a bank or institution, and thereby tie up all the securities on deposit with that institution by the mere service upon it of a paper requiring that all securities held by that bank, in so far and to the extent that the securities were on and after April 6, 1917, held by, on behalf of, for the benefit of, or for the account of any person, firm, or corporation at that time or at any time thereafter, a resident and citizen or subject of Germany. For an institution could and would not take upon itself the authority to determine whether the securities held for such person or firm were enemy-owned. Thereby a situation would have been created which Congress clearly did not intend. It is also noted that the alleged demand refers to stock of the Missouri Pacific Railway Company and the stock held by the trust company was not stock of the railway company, but of the new company, the Missouri Pacific Railroad Company.

In Sutherland v. Guaranty Trust Company of New York, supra, at page 698, the Supreme Court states: "It must at all times be considered that the property vests in the United States only when the demand is served." The "demand" means, of course, a valid demand, and, if no valid "demand," then the property would not vest in the United States.

For the reasons above stated, I am of the opinion that the alleged demand was a nullity; that consequently there has been no seizure by the Alien Property Custodian of the plaintiff's securities.

[3] Counsel for the Alien Property Custo-

dian urges that, by reason of section 7 (c) of the Trading with the Enemy Act, he could only be sued under section 9 of the act (Comp. St. § 3115½e), and therefore this action must be dismissed because it is not brought in the District of Columbia or the district where the plaintiff resides. The pertinent part of section 7 (c) as amended November 4, 1918 (chapter 201, 40 Stat. 1020), provides:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act. * * * Comp. St. § 3115½d.

Section 9 of the act, as originally enacted (chapter 106, 40 Stat. 419), provides:

"Except as herein provided, the money or other property conveyed, * * * to the Alien Property Custodian shall not be liable to lien, attachment, garnishment, trustee, process, or execution, or subject to any order or decree of any court." Comp. St. § 3115½e.

The last-mentioned provision has been carried over into the various amendments to section 9 (chapter 241, 41 Stat. 977; chapter 285, 42 Stat. 1511). The only provision in the Trading with the Enemy Act for suit against the Alien Property Custodian is in section 9 (a), as amended March 4, 1923 (Comp. St. § 3115½e), and the pertinent is as follows:

"That any person not an enemy or ally of enemy claiming any interest, * * * or other property which may have been conveyed, * * * to the Alien Property Custodian or seized by him hereunder * * * may file with the said Custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefore by the claimant, may order the payment, conveyance, * * * or delivery to said claimant of the money or other property so held by the Alien Property Custodian: * * * Provided, that no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the District Court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed. * * * * "

It is apparent from these sections that, where there has been a seizure by the Alien Property Custodian, suit to recover must be brought in the Supreme Court of the District of Columbia or in the District Court of the United States for the district in which claimant resides. Claimant does not reside in this district, and so, if there had been a seizure, this court would be compelled to dismiss this suit against the Alien Property Custodian for lack of jurisdiction. Fischer v. Palmer (D. C.) 259 F. 355. And also I think, where there has been no seizure, this court must dismiss as against the Alien Property Custodian. But the dismissal of the suit as against the Alien Property Custodian does not deprive this court of jurisdiction over the remaining defendants, the Central Union Trust Company and the Bankers' Trust Company (Jennings v. United States [C. C. A.] 264 F. 399), and in Phœnix Bank v. Risley, 111 U. S. 125, 4 S. Ct. 322, 28 L. Ed. 374, a question of similar nature was decided without the representative of the government being a party to the suit.

Accordingly, the motion to dismiss the bill of complaint against Howard Sutherland as Alien Property Custodian is granted, and the motions to dismiss as against the Central Union Trust Company and the Bankers' Trust Company are denied.

Settle order on notice.