**ANGLO OESTERREICHISCHE BANK v. FIRST NAT BANK AT PITTSBURGH.**

District Court, W. D. Pennsylvania. January 25, 1928.

No. 5028.

**1. War ⊜⟹12—American bank held indebted to Austrian bank for balance of deposit retained by it under bonds to Alien Property Custodian until after close of war.**

Plaintiff is a bank in Vienna and defendant a bank in Pittsburgh. At the opening of the war they were correspondents, each having a credit deposit with the other. During the war, defendant made a voluntary statement to the Alien Property Custodian of its indebtedness to plaintiff and delivered to him bonds covering the same but under agreement that title should not pass until it ascertained the amount of its credit with plaintiff, which might be set off, and then only to the excess above that amount; the remaining bonds to be returned, which agreement was carried out, and the amount so ascertained paid back. After termination of the war, by agreement and in accordance with the law of Austria, defendant's account with plaintiff was closed out and the amount due defendant placed in special deposit subject to its order. *Held*, that this transaction operated as payment of plaintiff's indebtedness to defendant, that defendant was discharged from its debt to plaintiff only to the extent of the amount finally retained by the Custodian, and that a right of action existed against it for the part of the deposit which was returned.

**2. Limitation of actions ⊜⟹180(1)—Limitations cannot be raised by demurrer or affidavit of defense averring question of law.**

Defense of limitation cannot be raised by demurrer nor by affidavit of defense raising questions of law under Pennsylvania Practice Act 1915 (Pa. St. 1920, §§ 17181–17204, as amended).

At Law. Action by Anglo Oesterreichische Bank, for the use of the Anglo-Austrian Bank, Limited, for the use of Meyer Grouf, against the First National Bank at Pittsburgh. On questions of law raised by affidavit of defense. Ruled in favor of plaintiff.

Patterson, Crawford, Arensburg & Dunn, of Pittsburgh, Pa., for plaintiff.

Alter, Wright & Barron, of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. The nominal plaintiff in this action is the Anglo Oesterreichische Bank, a banking corporation, and a citizen of Austria, its claim, by assignment, having devolved on Meyer Grouf, a citizen of the state of New York, as use plaintiff. No intervening rights being involved, this bank, located in the city of Vienna, will herein be designated as the plaintiff.

The action is brought in assumpsit against the First National Bank at Pittsburgh, based on the defendant's failure to pay, after due demand made, the sum of $77,315.52, with interest.

The affidavit of defense, without answering the averments of fact, raises certain questions of law under the Pennsylvania Practice Act of 1915 (Pa. St. 1920, §§ 17181–17204, as amended).

[1] The material averments of the statement of claim, which on this motion must be taken as true, and out of which the questions of law arise, may be summarized as follows:

The plaintiff and defendant are bankers—the former under the laws of Austria, the latter under the laws of the United States. Prior to the outbreak of war between the two countries, the plaintiff kept a dollar account with the defendant, at Pittsburgh, and the defendant kept a kronen account with the plaintiff at Vienna. Drafts on the plaintiff's dollar account were payable only on the bank in Pittsburgh; the account being maintained with no special contract provisions save those implied by law.

The defendant's Vienna account, was subject to certain provisions set forth in a statement of general conditions, sent to the defendant regularly, with each statement of the account, which included the following:

"We are entitled at any time, even during the course of a semester, to terminate our then existing business relations at our pleasure. The place of performance of all obligations arising out of our business relations, is the place where our main office, or, as the case may be, our branch office, is located

from which the statement of account is made. In case of litigation, the depositor subjects himself to the courts of such place having jurisdiction."

The conditions subjected the Vienna account to the law of Austria, and gave the plaintiff the right to discharge its debt to the defendant at any time, either by payment or other act recognized by the Austrian law as its equivalent.

On the declaration of war against Austria, December 7, 1917, there was a balance in plaintiff's favor in the Pittsburgh bank of $101,144.42, and a balance in defendant's favor in the Vienna bank, in three accounts, aggregating 647,934 kronen.

War being declared, all business relations and communication between the parties, under section 3 of the Trading with the Enemy Act (Comp. St. § 3115½b), were suspended and made illegal unless specially sanctioned by the President, or the War Trade Board. No general sanction was given until after the close of hostilities, when, on July 14, 1919, by resolution of the War Trade Board, trade and communication between the United States and Austria were again legalized.

On July 3, 1919, defendant, in petition presented to the Alien Property Custodian, stated that it owed plaintiff a credit balance of $101,144.42, and asking permission to deliver to him bonds purchased for that amount, which he should earmark, his title to them to be only to such portion which should remain after the satisfaction of defendant's claim against the plaintiff for its kronen balance in Vienna. This petition was granted by the Custodian and the conditions thereof accepted and agreed to, and, on August 12, 1919, defendant delivered to the Custodian, principally in Liberty bonds, its said dollar balance with interest, amounting to $110,868.28. This delivery was accompanied by a letter set forth in plaintiff's statement, specifying the conditions under which it was made. These, in substance, were that no title to the property delivered should vest in the Alien Property Custodian until the defendant ascertained the amount which plaintiff owed it, at which time the Custodian should return bonds in the ascertained amount, and retain title in the balance retained.

The plaintiff received no notice of this procedure by the defendant until July 6, 1921, when defendant wrote plaintiff the letter (Exhibit 8) of the statement of claim. Under the provisions of the Trading with the Enemy Act (Comp. St. §§ 3115½a— 3115½j), the defendant, in February, 1918, made a report to the Alien Property Custodian, upon which report, in April 1918, the Custodian made demand. But this demand was withdrawn by the Custodian on September 10, 1919, pursuant to an approval of such withdrawal by the Bureau of Law of the Custodian's office, duly authorized for that purpose.

In November, 1920, the defendant petitioned the Custodian, alleging, in substance, that it had ascertained the amount of its kronen balance with the plaintiff bank to be 609,886 kronen, the dollar equivalent of which, at the rate of 12 cents per krone, was $77,316.52, and that, under the reservation of title in the letter accompanying the delivery of the bonds to the Custodian, bonds in the ascertained amount were thus returnable to the defendant.

In obedience to this action, and pursuant to the Custodian's direction, the Treasurer of the United States paid to defendant, on April 25, 1921, the said sum of $77,315.52. After trade relations had been resumed, viz. on September 6, 1919, the plaintiff sent a cable to defendant, confirmed by letter of the same date, in substance, suggesting that, in order to settle its legal position, plaintiff desired to close out defendant's account and place the proceeds in currency in a special custody deposit, and that, if it could not do so, it would deposit the defendant's balance with the law courts in accordance with Austrian law.

In approval of this proposal, defendant, on September 24, 1919, directed by cable to "deposit our credit balance to new account with you." This was done, and on September 27, 1919, plaintiff wrote defendant, advising that the old accounts had been closed, as of that date, with a balance of 665,858 kronen in defendant's favor, and that that sum was now in custody deposit and at defendant's free disposal. Again, on December 21, 1919, defendant, on written request of plaintiff, confirmed the understanding that the custody deposit should have the same legal effect as a deposit in court. These facts fully appear in the exhibits attached to the plaintiff's statement of claim.

As against the statement of claim, the defendant contends:

First. That it does not state facts constituting a cause of action.

Second. Conceding the existence of a cause of action, that it is barred by the statute of limitations.

## Conclusions of Law.

In the light of the foregoing facts, and as relevant thereto, the following legal propositions may be stated:

(1) Under the Trading with the Enemy Act, the Alien Property Custodian is given the broadest powers—all the powers of a common-law trustee—over all property coming into his hands, with full authority to manage and dispose of the same by sale or otherwise, as if he were the absolute owner.

(2) This power exists only during the war. When war is ended and peace restored, the power to seize or sequester, or even to receive voluntary payment, is at an end. Thereafter the claims of any former enemy to any money or property received and held by the Custodian, or deposited with the Treasurer of the United States, shall be settled as Congress shall direct. Zimmermann v. Sutherland & Weiner Bank Verein, 274 U. S. 253, 47 S. Ct. 625, 71 L. Ed. 1034.

(3) Under executive orders, made to carry out the provisions of the Trading with the Enemy Act, the Custodian is clothed with full authority to settle any controversy, lien, or claim made adversely to the Custodian, with respect to any money or property involved, as if he were the absolute owner thereof, with full power and authority to make such payments and execute and deliver such writings as may be necessary to effect or evidence the same.

(4) The demand on the defendant, made by the Custodian on April 9, 1918, was abrogated by its withdrawal on September 10, 1919. The petition of defendant, on July 3, 1919, setting forth the balance due the plaintiff on its books, and asking that it might turn over to the Custodian the amount in bonds, was a voluntary petition under the provision of section 7 (d) of the Trading with the Enemy Act (Comp. St. § 3115½d).

(5) Inasmuch as the petition provided that the bonds purchased for delivery should be earmarked, and title to pass only to such portion as should remain after the satisfaction of defendant's claim against the plaintiff for its kronen balance in the Vienna bank; that this petition was granted by the Custodian, and the conditions thereof accepted and agreed upon; that it was followed by the delivery of the bonds as stipulated, accompanied by letter specifying the conditions aforesaid, under which it was made, among others, that no title to the property delivered should vest, until defendant ascertained the amount which plaintiff owed it, at which time the Custodian should return bonds in the ascertained amount, retaining title in the balance; that this, followed by defendant's petition, in November 1920, specifying the ascertained amount owing to defendant, and requesting the return of bonds in the ascertained amount, which request was followed by the Custodian's payment to defendant of such ascertained amount—these facts conclusively show that there was no intention on the part of defendant to part with title to the bonds, or on the part of the Custodian to take such title, that the Custodian was made the bailee of the bonds, his bailment to ripen into ownership of such part of the bailment only, when the amount of defendant's claim against plaintiff, should be ascertained, and the resulting set-off made.

(6) Final settlement being made under defendant's voluntary petition, after the War Trading Board had sanctioned the resuming of business relations, such proceeding is binding and conclusive on the defendant, on the Alien Property Custodian, and on the United States, whose agent in the transaction, he was. It follows that the defendant was discharged from its debt to the plaintiff, to the extent only of the amount which it voluntarily paid, and the Custodian received, from the plaintiff's credit balance, and that the remainder thereof, to wit, $77,316.52, remains in the plaintiff's hands. Sutherland v. Guaranty Trust Co. (C. C. A.) 11 F.(2d) 696.

(7) The defendant is not entitled to the set-off claimed at any rate of exchange. The facts show that defendant's Vienna account was subject to the laws of Austria, giving the plaintiff the right to discharge its debt at any time, either by payment or other act recognized by the Austrian law, as its equivalent. This it unquestionably did. As shown by the cable message of September 6, 1919, the confirmatory letter, and defendant's specific approval, plaintiff closed out defendant's account on September 27, 1919, by depositing the proceeds of its kronen account of 665,858 kronen in currency, in a special custody deposit, at defendant's free disposal.

(8) It thus appears that the parties, acting as free agents, entered into an agreement by which the pre-war debt was terminated, by the erection of the custody deposit, with the same legal effect as if deposited in court. This was in entire conformity with the provision of section 1425, and other provisions of the Austrian General Civil Law Code. This transaction discharged the plaintiff's liability, as defendant's debtor on a bank balance, substituting for it a new liability as bailee of the physical bank notes.

(9) This procedure appears free from legal difficulties, being in harmony with the Austrian law. Its declared purpose was, "In order to settle the legal position between our institutions"; in the words of the initial

cable, to "avoid clearing peace treaty." Its legal effect was to discharge the plaintiff of the old account, transferring the old obligation into the new one, and terminating the old obligations by substituting for it the new.

(10) The transactions which thus effected a legal discharge of the kronen debt are in no way affected by the Treaty of St. Germain. This treaty did not come into force as to any of the parties' signatory until July 16, 1920, and it did not come into force as to the United States until November 8, 1921, when the Treaty of Vienna was ratified. It follows that the plaintiff's statement of claim sets forth a legal cause of action.

[2] (11) Nor can the court hold that the action is barred by the statute of limitations. It is a general rule that the statute of limitations cannot be raised on demurrer or its equivalent, an affidavit raising questions of law. The statute of limitations is a defense often involving in its application questions of fact. It must be pleaded by way of defense, even if the statute were apparently applicable on the face of the statement, which does not here appear. To the statute when pleaded, a reply may be made averring facts which, if true, would toll the running of the statute.

The legal questions raised by the defendant must therefore be answered in favor of the plaintiff.